En el Tribunal Supremo de Puerto Rico

| JOSE SEPULVEDA RIVAS Y OTROS APELADOS .V DEPARTAMENTO DE SALUD APELANTES | Apelación TSPR98-58 |
| --- | --- |

Número del Caso: AC-95-0039

Abogados Parte Apelante: LCDO. JOSE O. GRAU COLLAZO
LCDA. OLGA CRUZ DE NIGAGLIONI

Abogados Parte Apelada: LCDO. FRANCISCO J. GONZALEZ MUNIZ
PROCURADOR GENERAL AUXILIAR

Abogados Parte Interventora:

Tribunal de Instancia: Superior, Sala de Humacao

Juez del Tribunal de Primera Instancia: Hon. Jorge L. Escribano Medina

Tribunal de circuito de Apelaciones: Circuito Reginal VI

Juez Ponente: Hon. Rivera Pérez

Fecha: 5/20/1998

Materia: Sentencia Declaratoria

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

JOSE SEPULVEDA RIVAS
Y OTROS

    Demandantes-Apelados

      vs.               AC-95-39        APELACION

DEPARTAMENTO DE SALUD

    Demandado-Apelante

Opinión Concurrente emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 20 de mayo de 1998.

      Concurro con el resultado al que llega la mayoría en el caso de autos. El Departamento de Salud tiene la <u>obligación</u> de recobrar los fondos públicos que había pagado indebidamente a algunos de sus empleados, y éstos tienen el deber de restituir los fondos aludidos.

      Sin embargo, no estoy de acuerdo con los intrincados pronunciamientos que formula en su opinión la mayoría del Tribunal, para justificar el resultado al que llega. El asunto puede resolverse de modo claro y sencillo, sin dar tantas vueltas conceptuales como lo hace la mayoría en su opinión.

      El fondo del problema radica en la desacreditada distinción entre "error de hecho" y "error de

derecho", que tanto el Tribunal Supremo español como la crítica erudita civilista ya han abandonado. Hoy día, en la doctrina moderna, el que recibe el pago de lo indebido debe restituirlo, sin que importe si el pago se hizo por "error de hecho" o por "error de derecho". Puig Brutau, _Fundamentos de Derecho Civil_, Tomo II, Vol. III, a las págs. 35-37 (1983).

La mayoría no aprovecha la ocasión para poner nuestra jurisprudencia al día con la corriente doctrinal más ilustrada. La mayoría expresamente explica que no lo hace porque supuestamente el caso de autos gira sólo en torno a un "error de hecho", por lo que sería impropio, según la mayoría, dilucidar aquí lo relativo al "error de derecho". Sin embargo, de manera inconsistente con dicha explicación, la propia mayoría en su opinión alude varias veces al llamado "error de derecho" e incluso intenta definir en qué consiste tal error y distinguirlo del "error de hecho".

Más aun, para llegar al resultado al que llega, la mayoría se ve obligada a recurrir a una técnica de decisión muy cuestionable. Primero resuelve, por puro _fiat_, sin fundamentación alguna, que un error "de trámite" es un "error de hecho". Luego concluye que, como el error en el caso de autos fue uno "de trámite", por ende, fue uno de hecho.

Finalmente, la mayoría no explica de modo alguno porqué la actuación del Departamento de Salud, de hacer unos desembolsos improcedentes, que era evidentemente contraria a su deber jurídico de pagar sólo lo debido, no constituye un "error de derecho". Es al menos argüible, que cualquier actuación gubernamental que es contraria al mandato de ley constituye un "error de derecho".

Todas estas complicaciones semánticas se pueden obviar si en lugar de resolver estos asuntos sobre la base de meros conceptos, se acude al verdadero fondo del problema y a los valores e intereses jurídicos que están en juego. En lo pertinente al asunto que aquí nos concierne, en nuestro país, la Constitución consagra una política **de rigurosa legalidad en el manejo de los fondos públicos**. Emana de lo dispuesto, tanto en la

sección 9 del Art. VI, como de lo dispuesto en la sección 22 del Art. III. Conforme a esta política, los fondos públicos, que pertenecen sólo al pueblo, pueden desembolsarse únicamente conforme esté dispuesto por ley. Cualquier desembolso que no se realice conforme a ley, es ilícito por su propia naturaleza. Debe ser reclamado por la autoridad gubernamental correspondiente, y el que lo recibió indebidamente, debe restituirlo.

En el caso de autos, la política constitucional referida nos provee un fundamento adicional para interpretar el Art. 1795 del Código Civil, 31 L.P.R.A. sec. 5121, conforme a su claro y sencillo tenor literal. Dicho artículo dispone que cuando por error se paga lo indebido, surge la obligación de restituir. <u>El Artículo no dispone nada sobre si el error fue "de hecho" o "de derecho"</u> y así debemos aplicarlo, dejando a un lado ya las difíciles y artificiosas distinciones sobre tipos de error, que han dado lugar a confusiones innecesarias y que opacan la consideración debida de otros valores e intereses jurídicos medulares suscitados por la cuestión aludida.[1]

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO
EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Sepúlveda Rivas y otros

**Demandantes-apelados**

**vs.**

**AC-95-39          APELACIÓN**

**Departamento de Salud**

**Demandado-apelante**

---

[1] En casos que no tratan sobre el pago indebido de fondos públicos, existen otros intereses y valores que también son pertinentes, como los que incorpora la doctrina del enriquecimiento injusto.

**Opinión del Tribunal emitida por el Juez Asociado Señor REBOLLO LÓPEZ**

San Juan, Puerto Rico a 20 de mayo de 1998.


Revisamos, vía apelación, una sentencia dictada por el Tribunal de Circuito de Apelaciones, mediante la cual se le negó al aquí apelante, el Departamento de Salud, el derecho a recobrar unas cantidades de dinero que había pagado indebidamente a algunos de sus empleados.

Por considerar que erró el referido foro apelativo en la aplicación de la doctrina civil denominada "cobro de lo indebido", revocamos.


I.

El 17 de octubre de 1984, los apelados José Sepúlveda Rivas, Ana Delia Medina Malavé y Francisco Rivera Rodríguez acudieron ante la Junta  de Apelaciones del Sistema Central de Administración de Personal, en adelante "J.A.S.A.P.", con dos reclamaciones: por un lado, impugnaron el sueldo que les había asignado el Departamento de Salud alegando que para su determinación no se había aplicado correctamente la normativa vigente; y por otro lado, solicitaron que se les asignara el diferencial en sueldo que debían percibir por riesgos inherentes a su trabajo en el Centro de Salud Mental de Humacao, tal como había sido determinado por ley el 1 de abril de 1984[2].

La J.A.S.A.P. resolvió los planteamientos esbozados mediante resolución dictada el 18 de marzo de 1988 en la cual: respecto a la primera alegación, declaró no ha lugar la impugnación de salarios y, respecto a la segunda, ordenó que se corrigieran los diferenciales de conformidad con el cómputo explicado en la misma resolución.  En ese sentido, se obligó al Departamento de Salud a que pagara a los reclamantes, retroactiva y prospectivamente, un diferencial de cuarenta y nueve dólares ($49.00) mensuales.

La mencionada agencia administrativa ejecutó lo dispuesto en la resolución respecto al pago de los diferenciales pero, inexplicablemente, en lugar de pagar los cuarenta y nueve dólares ($49.00) que ordenó la J.A.S.A.P, realizó pagos por setenta y cuatro dólares ($74.00); es decir, pagó a dichos empleados un exceso mensual de veinticinco dólares ($25.00).

Seis años más tarde, cuando el Departamento de Salud se percató del error cometido en el pago de los diferenciales, comenzó a realizar un descuento en la retribución de los salarios de los empleados

---

[2]  Artículo 7 de la Ley de Retribución Uniforme, Ley Núm. 89 de 12 de julio de 1979, según enmendada (3 L.P.R.A. sec. 760f).

concernidos con el fin de recobrar las cantidades abonadas en exceso entre el 1 de abril de 1984 y el 31 de marzo de 1990[3].

Esta actuación de la agencia fue impugnada por los aquí apelados ante el Tribunal de Primera Instancia, Sala Superior de Humacao, mediante la presentación de una acción de sentencia declaratoria para que se estableciera la ilegalidad de lo actuado por el Departamento de Salud y, por ende, se dejara sin efecto el descuento salarial realizado.

El 3 de mayo de 1995, el Tribunal de Primera Instancia dictó sentencia declarando _sin_ lugar la demanda a base de la aplicación de la doctrina del "cobro o pago de lo indebido". Como fundamento de su determinación, expresó que el pago indebido se debió a un error de hecho y que este tipo de errores, a diferencia de los supuestos en que existe error de derecho, generan a favor de quien incurrió en él una acción para solicitar la devolución de lo pagado errónea e indebidamente. En consecuencia, resolvió que el Departamento de Salud podía hacer los descuentos objetados.

Inconformes con la decisión del foro de instancia, los demandantes presentaron recurso apelativo ante el Tribunal de Circuito de Apelaciones, Circuito Regional de Caguas-Humacao-Guayama. El 23 de octubre de 1995, dicho tribunal apelativo intermedio dictó sentencia _revocando_ la determinación del Tribunal de Primera Instancia, a base de que el pago en exceso realizado por el Departamento de Salud se debió a una "mera liberalidad" y que, en tales casos, no procede recobrar lo pagado indebidamente.

Contra la sentencia del Tribunal de Circuito de Apelaciones recurrió ante nos el Departamento de Salud, vía apelación, imputándole haber errado al:

---

[3] La cantidad a recobrar ascendía, según el Departamento de Salud, a $1,576.45 del señor José Sepúlveda Rivas, $1,636.60 de la señora Ana Delia Medina Malavé y $2,773.31 del señor Francisco Rivera Rodríguez.

"A.    ...    determinar    que    los    pagos    efectuados    por    el
Departamento    de    Salud    en    exceso    de    lo    ordenado    por
J.A.S.A.P.,    a    pesar    de    constituir    un    error    de    hecho,    se
hicieron    por    'mera    liberalidad',    por    lo    cual    no    procede    su
recobro.

B.    ...    decidir    que    no    aplica    el    Artículo    1218    del    Código
Civil    (31    L.P.R.A.    sec.    3405)    al    caso    de    autos."

Habiendo    comparecido    ambas    partes    y    presentado    sus
correspondientes alegatos, estamos en posición de resolver.    Procedemos
a así hacerlo.


                                    II.

El primer error alegado por el Departamento de Salud requiere,
para su discusión, un análisis pormenorizado de
la doctrina civil del "cobro de lo indebido".[4]

Dicha doctrina, que tiene su origen en el remoto derecho romano,
fue adoptada por el Código Civil español, y de esta forma se incorporó
posteriormente a nuestro acervo jurídico.    El Artículo 1795 de nuestro
Código Civil, 31 L.P.R.A. sec. 5121 *et seq.*, <u>regula</u> esta figura y la
<u>define</u> como sigue:

        "Cuando    se    recibe    alguna    cosa    que    no    había    derecho    a
    cobrar,    y    que    por    error    ha    sido    indebidamente    entregada,
    surge    la    obligación    de    restituirla."


Puede apreciarse que la obligación de restitución que instituye
esta disposición legal <u>no</u> nace de la voluntad contractual de las
partes.    Debido a ello, tradicionalmente se ha considerado que la
naturaleza jurídica de esta figura es cuasicontractual[5] y ésa fue la

---

[4]   Para un estudio más profundo de esta doctrina, véanse:   M. Albaladejo, *Derecho civil; derecho de obligaciones*, 8va. ed., Barcelona, Bosch, 1989, t. II, vol. II, págs. 489-512;   J. Puig Brutau, *Fundamentos de derecho civil*, 1ª. ed., Barcelona, Bosch, 1983, t. II, vol. III, págs. 30-42;   L. Díez Picazo y A. Gullón, *Sistema de derecho civil*, 3ª. ed., Madrid, Tecnos, 1982, vol. II, págs. 571-585;   J. Castán, *Derecho civil español común y foral*, 10ª. Ed., Madrid, Reus, 1977, vol. 4, págs. 853-872;   F. Puig Peña*, Compendio de derecho civil español; contratos*, 3ª. ed., Madrid, Pirámide, 1976, vol. IV, págs. 404-413; J.L. Lacruz Berdejo, *El pago de lo indebido*, 46 Rev. Jur. U.P.R. 303 (1977).

[5]   Respecto a la naturaleza jurídica de la figura del "cobro de lo indebido", la dogmática más moderna de derecho comparado entiende que la causa de la obligación de restituir se asienta en el enriquecimiento injusto que se produciría a favor del receptor de la cosa o servicio prestado, puesto que carece del derecho de crédito necesario para justificar el provecho recibido.   F. Puig Peña, *Op. cit.*, pág. 407.

visión adoptada por nuestro Código Civil al incluir su regulación en el capítulo denominado como los "cuasicontratos"[6].

No nos detendremos en la discusión teórica referente a cuál deba ser el verdadero fundamento de la obligación de restitución que establece esta doctrina. Independientemente de ello, lo que nos corresponde en este caso es analizar detenidamente todos sus elementos, aplicar esta doctrina a los hechos del caso de autos y concluir si efectivamente concurrieron los factores que dan lugar a la obligación de restituir o si, por el contrario, no se cumplieron las condiciones de la doctrina y por lo tanto no procede la devolución. Veamos.

Está ampliamente establecido por nuestra jurisprudencia[7] y por la doctrina científica[8] que para que se configure la teoría del "cobro de lo indebido" es necesaria la concurrencia de tres requisitos. Éstos son: (1) que se produzca un pago con la intención de extinguir una obligación; (2) que el pago realizado no tenga una justa causa, es decir, que no exista obligación jurídica entre el que paga y el que cobra, o existiendo sea por una cuantía menor a la pagada; y (3) que el pago haya sido hecho por error y no por mera liberalidad o por cualquier otro concepto. En particular, en nuestra jurisdicción adoptamos tempranamente la distinción entre el error de hecho y de derecho así como la norma de que el error que da origen a este

---

Si tenemos en cuenta que "la figura del enriquecimiento injusto aparece subsumida en la de los cuasicontratos", *Ortiz Andújar* v. *E.L.A.*, 122 D.P.R. 816 (1988), podemos concluir que la dogmática moderna y la tradicional no se encuentran en conflicto.

[6] El Código Civil define esta fuente de las obligaciones así:

> "Son cuasicontratos los hechos lícitos y puramente voluntarios, de los que resulta obligado su autor para con un tercero y a veces una obligación recíproca entre los interesados." Artículo 1787 del Código Civil, 31 L.P.R.A. sec. 5091.

[7] Véase: *E.L.A.* v. *Asociación de Empleados*, 126 D.P.R. 320 (1990); *Sucesión Choisne* v. *Municipio*, 100 D.P.R. 501 (1972); *Fuentes* v. *Aponte*, 62 D.P.R. 722 (1943); *Quiñones* v. *Comisión Industrial*, 60 D.P.R. 447 (1942); *Silva* v. *Sucesión Caratini*, 51 D.P.R. 778 (1937); *Sucesión Marín* v. *Municipio de Arecibo*, 28 D.P.R. 515 (1920); *American Railroad Co.* v. *Wolkers*, 22 D.P.R. 283 (1915); *Arandes* v. *Báez*, 20 D.P.R. 388 (1914).

[8] Véanse: L. Díez Picazo y A. Gullón, *Op. cit.*, pág. 501; M. Albaladejo, *Op. cit.*, pág. 576; F. Puig Peña, *Op. cit.*, págs. 407-408; J. Castán, *Op. cit.*, págs. 866-867; J. Puig Brutau, *Op. cit.*, págs. 31-39.

cuasicontrato y, por ende, <u>a la devolución de lo indebidamente pagado</u>
<u>es sólo el de hecho y no el de derecho.</u>[9]

En palabras de este Tribunal:

"De acuerdo con la ley vigente y la jurisprudencia, para
que exista el cuasicontrato de cobro de lo indebido, es
necesaria la concurrencia de dos requisitos, a saber: 1º.,
que se pague indebidamente, y 2º., que se haga el pago por
error o equivocación y no por mera liberalidad o por
cualquier otro concepto. El error que da origen el [sic]
cuasicontrato, debe ser de hecho y no simplemente de
derecho." *American Railroad Company* v. *Wolkers*, 22 D.P.R.
283, 288 (1915).

En este punto, debemos enfatizar que, aun cuando este Tribunal ha
acogido la norma que acabamos de reiterar, a los efectos de que sólo el
error de hecho, y no el de derecho, da lugar a la doctrina de cobro de
lo indebido, <u>nunca</u> se ha definido qué debe considerarse por cada tipo
de error. En el ejercicio de nuestro deber de orientar a la profesión
legal en cuanto a la interpretación del derecho aplicable, procedemos a
delimitar y distinguir tales conceptos.

El "error de derecho" se ha conocido tradicionalmente como aquél
en el que incurre quien actúa sin ajustarse a lo dispuesto por una
norma jurídica vigente. En el contexto del cobro de lo indebido,
comete error de derecho quien realiza un pago bajo la creencia de que
el mismo le es exigible en derecho, bien por desconocimiento de la

---

[9] Acogimos esta norma en *Arandes* v. *Báez*, 20 D.P.R. 388 (1914). Para su adopción se
tomó como fundamento la jurisprudencia del Tribunal Supremo de España y tratadistas
también españoles que interpretaban el Artículo 1895 de su Código Civil --equivalente
del Artículo 1796 de nuestro Código de 1902, que hoy corresponde al Artículo 1795 del
Código Civil vigente, 31 L.P.R.A. sec. 5121-- en el sentido de que en la doctrina del
cobro de lo indebido sólo el error de hecho, y no el de derecho, da lugar a la
obligación de restitución.

Tal distinción fue abandonada en la jurisdicción española a partir de la
Sentencia de su Tribunal Supremo de 7 de julio de 1950, bajo el fundamento de que
ningún pago realizado por error, independientemente del tipo de error cometido, debe
aprovechar a quien no tiene derecho de crédito sobre lo que recibe, y ello a base de
la doctrina del enriquecimiento injusto.

Solicita de nosotros el apelante que adoptemos esta posición y revoquemos así
toda nuestra jurisprudencia relativa a que sólo el error de hecho, y no el de derecho,
da lugar a la devolución de lo pagado indebidamente. <u>No</u> debemos acoger tal petición
por una razón fundamental, cual es que el efecto que pueda tener un error de derecho
en la doctrina del cobro de lo indebido <u>no</u> afecta a los hechos del caso, donde todo el
análisis versa sobre la comisión de un error de hecho.

Acoger la pretensión del apelante, constituiría un abuso de discreción en el
ejercicio de nuestra facultad para interpretar únicamente aquel derecho aplicable a
los hechos del caso.

norma que lo descarga del pago, bien por una interpretación errónea del derecho aplicable.[10]

El "error de hecho", por el contrario, se refiere a quien obra a base de unos hechos que no son los verdaderos. También debemos entender que se cometió un error de hecho cuando, aun conociendo los hechos verdaderos, se produce una equivocación meramente formal o de trámite; es decir, cuando se comete lo que popularmente se ha denominado un "error humano".

A la luz de lo anteriormente expresado, no cabe duda de cuáles son los elementos configuradores de la doctrina del cobro de lo indebido. Ahora bien, antes de proceder a aplicar la misma a los hechos del caso de autos, debemos determinar sobre quién recae la carga de la prueba de tales elementos, según lo regula el Código Civil. En este sentido, debemos analizar dos disposiciones:

> "La prueba del pago incumbe al que pretende haberlo hecho. También corre a su cargo la del error con que lo realizó, a menos que el demandado negare haber recibido la cosa que se le reclame. En este caso, justificada por el demandante la entrega, queda relevado de toda otra prueba. Esto no limita el derecho del demandado para acreditar que le era debido lo que se supone que recibió." (Énfasis suplido.) Artículo 1800 del Código Civil, 31 L.P.R.A. sec. 5126.

> "Se presume que hubo error en el pago cuando se entregó cosa que nunca se debió o que ya estaba pagada; pero aquél a quien se pida la devolución puede probar que la entrega se hizo a título de liberalidad o por otra causa justa." (Énfasis suplido.) Artículo 1801 del Código Civil, 31 L.P.R.A. sec. 5127.

De una lectura de estas disposiciones, podemos llegar a las siguientes conclusiones: (1) por un lado, la prueba del pago de los veinticinco dólares ($25.00) mensuales indebidos correspondería al Departamento de Salud, dado que es la agencia que alega haberlo hecho; (2) por otro lado, respecto a la prueba del error debemos tener en cuenta las dos disposiciones enumeradas. Según el Artículo 1800 del Código Civil, 31 L.P.R.A. sec. 5126, la prueba del error correspondería

---

[10] En *Cartagena* v. *E.L.A.*, 116 D.P.R. 254 (1985), resolvimos que una actuación basada en la interpretación errónea de una ley o reglamento constituye error de derecho.

también al Departamento de Salud.  Ahora bien, si no lo probara, al caso de autos le aplicaría la presunción de que hubo error cuando se entregó cosa que nunca se debió, establecida en el Artículo 1801, 31 L.P.R.A. sec. 5127, ya que los veinticinco dólares ($25.00) pagados en exceso mensualmente nunca se debieron;  es decir, en los hechos ante nos podría presumirse el error del Departamento de Salud.  En tal caso, se invertiría el peso de la prueba y, por lo tanto, correspondería a los empleados probar que los pagos se hicieron, no por error, sino por mera liberalidad o por cualquier otra justa causa.

Una vez esbozado el marco general de a qué parte correspondía probar ante el foro judicial cada elemento de la doctrina del cobro de lo indebido, debemos pasar a analizar si efectivamente cada parte cumplió con la carga de la prueba que le impone el ordenamiento civil. Veamos.

No están en controversia ante nos, ni lo han estado ante los anteriores foros judiciales, los dos primeros elementos de la doctrina del cobro de lo indebido.

Por un lado, ambas partes han asumido en sus alegatos que el pago de setenta y cuatro dólares ($74.00) mensuales, que el Departamento de Salud hizo a los apelados, tuvo la intención de satisfacer la obligación de pago de los diferenciales establecida por la J.A.S.A.P. en su resolución.  Ese hecho representa el cumplimiento del primer requisito de la doctrina, a saber: que se haya producido un pago con la intención de extinguir una obligación.

Por otro lado, tampoco está en discusión la existencia del segundo requisito enumerado, es decir, que la obligación jurídica en que se fundó el pago no existe y, por lo tanto, el pago fue indebido.  En cuanto a ello, debemos aclarar que en el caso de autos sí existía una obligación jurídica entre el Departamento de Salud y los empleados aquí apelados.  Ahora bien, tal obligación se limitaba a los términos establecidos por la J.A.S.A.P. en su resolución de 18 de marzo de 1988,

esto es, se limitaba al pago de cuarenta y nueve dólares ($49.00) mensuales. Los veinticinco dólares ($25.00) pagados en exceso por el Departamento de Salud no tenían una justa causa, no respondían a ninguna deuda ni obligación jurídica. Respecto a este particular, M. Albaladejo recoge en su obra diferentes sentencias del Tribunal Supremo español al efecto de que "[h]ay pago de lo indebido, no sólo si se pagó lo no debido, sino también, por el *exceso*, si erróneamente se paga *más* de lo debido [citas omitidas]." (Énfasis en el original.)[11]

A nuestro juicio, en consecuencia, queda suficientemente acreditada la concurrencia de los dos primeros elementos necesarios para la configuración de la doctrina del cobro de lo indebido.

El conflicto se presenta respecto a la existencia del requisito de que el Departamento de Salud realizara el pago de los veinticinco dólares ($25.00) en exceso, no por mera liberalidad, sino por error, y en concreto, por error de hecho. Veamos.

Según expresáramos anteriormente, la prueba de la comisión del error le corresponde a quien alega haberlo cometido, es decir, en el caso de autos corresponde en primera instancia al aquí apelante. Artículo 1800 del Código Civil, 31 L.P.R.A. sec. 5126. Sólo en el caso de que, tras la evaluación de la prueba realizada por el tribunal de instancia, se concluyera que el Departamento de Salud no estableció por preponderancia de la prueba la comisión de su error, podría activarse la presunción recogida en el Artículo 1801. De activarse tal presunción, y sólo bajo esa circunstancia, correspondería a la otra parte, en este caso a los empleados, probar que el pago se realizó por mera liberalidad o por cualquier otra causa diferente del error de hecho. Artículo 1801 del Código Civil, 31 L.P.R.A. sec. 5127.

Nos corresponde en este punto analizar los hechos del caso y determinar si efectivamente el Departamento de Salud probó que el pago de los veinticinco dólares ($25.00) en exceso se realizó por un error,

---

[11]  M. Albaladejo, *Op. cit.*, pág. 501.

y en concreto por un error de hecho. Para llegar a tal determinación debemos tomar conocimiento de la estipulación que las partes realizaron ante el tribunal de primera instancia. La misma se recoge en la minuta de 29 de junio de 1994, aprobada por el magistrado de instancia, que lee como sigue:

> "Ambos abogados han planteado al Tribunal una estipulación. Esa estipulación consiste básicamente en: Primero: Que el Estado reconoce que el Departamento de Salud cometió un error en el cálculo y cómputo del salario a pagársele a los demandantes y segundo: Que los demandantes cobraron de buena fe ese salario."[12]

No cabe duda de que la estipulación transcrita establece que el Departamento de Salud actuó por error cuando realizó los pagos en controversia. Ahora bien, la duda surge en torno a si se estipuló un error de hecho o de derecho dado que las palabras "error en el cálculo y cómputo del salario" pueden generar cierta confusión. En este respecto, consideramos que le asiste la razón al aquí apelante, en el sentido de que el error estipulado fue uno de hecho. Veamos.

En primer lugar, examinamos cuál fue la intención del Estado al realizar la estipulación. Para ello, podemos acudir al memorando de derecho que presentó ante el Tribunal de Primera Instancia con fecha de 28 de marzo de 1994, es decir, con tres meses de anterioridad a la celebración de la estipulación. En tal memorando se hizo constar:

> ". . . cuando la agencia va a cuplir [sic] la sentencia de JASAP <u>luego de aclarada toda discrepancia interpretativa</u> y luego de incluirle en su Resolución una tabla donde desglosó cómo se establecería el ajuste en sueldo esta <u>no se percata</u> que en lugar de ajustarle el salario conforme a lo que JASAP le había ordenado computó mal e hizo un pago a base de tres pasos de la nueva escala retributiva yéndose por encima del valor absoluto que se había establecido." (Negrilla en el original.) (Subrayado nuestro.)

---

[12] Debemos recordar que nuestra Regla 5.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.5.2, establece que pueden estipularse entre las partes los hechos que dan lugar a la controversia de derecho. Este Tribunal, en la aplicación e interpretación de la regla citada, ha resuelto en innumerables ocasiones que las estipulaciones en los hechos obligan tanto a las partes como al juez. Véase, como ejemplo, *Roque* v. *Secretario de Hacienda*, 127 D.P.R. 842 (1991). En ese sentido, cuando unos hechos quedan estipulados por las partes, como sucede en el caso de autos, no procede requerir prueba sobre ellos, dado que la estipulación significa una ausencia de controversia respecto a la realidad o no de tales hechos.

De estas frases se desprende que, desde el primer momento, el Departamento de Salud consideró que había errado, no al interpretar la norma aplicable para la determinación del diferencial --lo cual, según definimos, constituiría error de derecho--, sino al no acatar la orden específica emitida por la J.A.S.A.P. --lo cual constituye un error de hecho--. Resultaría completamente ilógico interpretar, como pretenden los apelados, que la estipulación realizada tres meses más tarde representa admitir la comisión de un error de derecho.

Un segundo elemento que debemos tener en cuenta, para determinar qué tipo de error se consideró en la estipulación realizada, es la apreciación que de la referida estipulación hizo el Tribunal de Primera Instancia. Dicho foro, aun cuando en su sentencia no concluyó expresamente que el error cometido fue uno de hecho, resolvió que era procedente la devolución de lo pagado en exceso a base de la doctrina del cobro de lo indebido. Dado que tal devolución sólo procede por error de hecho, podemos concluir que la apreciación del tribunal que tuvo ante sí a las partes, y ante quien se realizó la estipulación, fue al efecto de considerar que se estaba pactando la comisión de un error de hecho por la agencia.

Debemos aplicar aquí la reiterada doctrina referente a las limitaciones que tiene el tribunal apelativo al revisar las apreciaciones y determinaciones de hecho que hace un tribunal de instancia. Hemos resuelto en múltiples ocasiones que, en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, las apreciaciones de la prueba hechas por el tribunal de instancia merecen gran deferencia por parte del tribunal apelativo y no deben ser descartadas, modificadas arbitrariamente, ni sustituidas por el criterio del tribunal revisor.[13] El fundamento de esta deferencia hacia el tribunal de instancia es que

---

[13] Véase: *Mercado Quilichini* v. *P.U.C.P.R.*, Opinión y Sentencia de 27 de junio de 1997; *Monllor* v. *Soc. de Gananciales*, Opinión y Sentencia de 13 de junio de 1995; *Sánchez Rodríguez* v. *López Jiménez*, 116 D.P.R. 172 (1985); y *Pérez Cruz* v. *Hospital La Concepción*, 115 D.P.R. 721 (1984).

el juez inferior tuvo la oportunidad de observar toda la prueba presentada y, por lo tanto, se encuentra en mejor situación que el tribunal apelativo para considerarla.[14]

De todo lo anterior, podemos concluir que la decisión del tribunal de instancia, respecto a que las partes estipularon un error de hecho y no de derecho, merece nuestra deferencia ya que el juez de instancia tuvo ante sí a ambas partes en el momento de llevar a cabo la estipulación y, de este modo, tuvo mayor oportunidad que este Tribunal o el Tribunal de Circuito de Apelaciones para conocer la intención de éstas.

Finalmente, en apoyo de nuestra determinación al efecto de que el error que se cometió en el presente caso fue uno de hecho, <u>debe enfatizarse que, en ningún caso, cabría considerar que el error cometido fue uno de derecho</u>. La interpretación de derecho sobre la cantidad a que eran acreedores los empleados fue determinada por la J.A.S.A.P. en su resolución de 18 de marzo de 1988. Como ya hemos adelantado, allí se dispuso de forma clara que los aquí apelados tenían derecho a cobrar cuarenta y nueve dólares ($49.00) mensuales y no setenta y cuatro ($74.00). Tras esta específica determinación, el Departamento de Salud venía obligado a aplicarla, sin que le correspondiera hacer ninguna interpretación de ley, reglamento o cualquier otro tipo de disposición. Lo ocurrido fue que en esa simple acción de acatar la orden, el Departamento de Salud incurrió en error y, sin lugar a dudas, ése no puede considerarse un error de derecho sino meramente un error de trámite y, por lo tanto, de hecho.

Por todo lo anterior, concluimos que el apelante cumplió con la carga de la prueba que le impone el Código Civil puesto que, mediante estipulación, dejó establecido que el pago en exceso realizado a los

---

[14] Únicamente se han excepcionado de esta regla general los supuestos en que las conclusiones de hecho se basan exclusivamente en prueba documental o pericial, y tales excepciones tienen su fundamento en que en estos casos el tribunal apelativo está en idéntica posición que el tribunal inferior respecto a la posibilidad de examinar la prueba. No es ésta la situación del caso de autos. Véase: *Abudo v. Autoridad*, 105

apelados fue producto de un error de hecho.  De ello debemos derivar que, efectivamente, procede que los empleados aquí apelados restituyan al Departamento de Salud las cantidades recibidas como resultado del error de hecho cometido por la agencia.  En consecuencia, resolvemos que erró el Tribunal de Circuito de Apelaciones al concluir que el pago en exceso se realizó por mera liberalidad y que, por lo tanto, no procedía su devolución.[15]

III.

Pretenden los apelados que, tal como hizo el Tribunal de Circuito de Apelaciones, analicemos el presente caso a la luz de lo resuelto en *American Railroad Company* v. *Wolkers*, ante, reafirmado en *Pueblo* v. *Acevedo*, 65 D.P.R. 473 (1945), a los efectos de que no cabe hablar de error de hecho cuando se actúa conociendo la verdad de los hechos.  No les asiste la razón.  Veamos.

Una lectura superficial de las dos referidas decisiones puede llevar a la errónea conclusión de que la norma instituida en las mismas no permite que resolvamos el caso de autos como lo hemos hecho.  Esa,

_____

D.P.R. 728 (1977); *Morán* v. *Gracia*, 106 D.P.R. 155 (1977); *Díaz García* v. *Aponte Aponte*, 125 D.P.R. 1 (1989).

[15] Dado que el primer error alegado ha quedado resuelto a base de la aplicación de la doctrina civilista del cobro de lo indebido, se hace innecesario entrar a discutir la aplicación de la doctrina de derecho administrativo que excepciona a la Administración Pública del deber de actuar conforme a los actos propios cuando pueda verse afectada una política pública. Véase: *Plan* v. *Alcalde*, 114 D.P.R. 697 (1983); *Del Rey* v. *Junta*, 107 D.P.R. 348 (1978); *Mendoza* v. *Asociación de empleados*, 94 D.P.R. 564 (1967); *Infante* v. *Tribunal Examinador de Médicos*, 84 D.P.R. 308 (1961).

Si entendiéramos que la referida doctrina es aplicable, concluiríamos que, dado que la política pública referente a evitar la malversación de los fondos gubernamentales se ve afectada, el Departamento de Salud no queda obligado por su actuación anterior -los pagos realizados— y los empleados aquí apelados no tienen un derecho adquirido a cobrar lo pagado erróneamente por la agencia.  Esa solución no afectaría lo resuelto a base del cuasicontrato del cobro de lo indebido.

Tampoco se vería afectada nuestra resolución de los hechos si, por el contrario, concluyéramos que la doctrina administrativa no tiene aquí aplicación por hallarnos ante una relación de carácter civil.

De todo lo anterior surge que la solución a la que hemos llegado en el presente caso no puede verse afectada por la determinación que pudiéramos tomar respecto a la aplicación de la doctrina administrativa.  Por lo tanto, en aras a la economía procesal, es innecesario que pasemos a considerarlo en profundidad.

sin embargo, sería una conclusión precipitada y errónea dado que el presente caso es claramente distinguible de los antes señalados.

Analicemos, en primer lugar, lo resuelto en *American Railroad Company* v. *Wolkers*, ante. En este caso, los hechos se inician con la muerte de Félix Wolkers, ocurrida en un accidente sufrido por uno de los trenes de la compañía mencionada, para la cual trabajaba la víctima. Como consecuencia de ello, el padre del fallecido reclamó contra la compañía ferroviaria por los daños y perjuicios sufridos debido a la muerte de su hijo. La compañía pagó a éste en concepto de los daños sufridos, aun cuando sabía que existían unos menores que, aunque no habían sido reconocidos por el fallecido a la fecha de su muerte, se tenían por hijos del difunto. En otras palabras, la corporación pagó al padre teniendo el conocimiento de que, si los susodichos menores eran declarados judicialmente hijos naturales del difunto, serían ellos, y no el padre del fallecido, los titulares de la acción para reclamar por los daños y perjuicios sufridos por la muerte del occiso Félix Wolkers. Efectivamente, cuando tales menores fueron declarados judicialmente hijos del fallecido, reclamaron contra la compañía ferroviaria en el mismo concepto en que había reclamado anteriormente el que ahora era su abuelo. En ese momento, la corporación reclamó contra éste a la luz de la doctrina del cobro de lo indebido. A base de estos hechos, este Tribunal resolvió:

> "La compañía demandante no puede alegar que actuó desconociendo la verdad de los hechos.
> . . . .
> Si, pues, con conocimiento de los hechos, la compañía pagó al demandado, no puede ahora volver sobre su [sic] propios actos y pedir la restitución de la cantidad bajo tales circunstancias entregada." *American Railroad Company* v. *Wolkers*, ante, pág. 290.

En *Pueblo* v. *Acevedo*, ante, ambas partes realizaron un contrato para la construcción de un tramo de la carretera número dos, conviniéndose que la obra terminaría el 4 de mayo de 1942. Cercana la fecha de finalización convenida, en vista de que resultaba obvio que el

contratista no iba a terminar la obra para dicha fecha y debido a que tal construcción tenía una gran urgencia para el Estado por cuestiones de defensa nacional, se convino entre las partes la rescisión del contrato. A pesar de las discrepancias surgidas en torno a qué cantidad de terreno había sido excavada por el contratista y, por ende, en torno a cuánto debía ascender el pago que debía hacerse al contratista, el Gobierno, debido a la urgencia que revestía este asunto, transigió con el contratista por las cifras de dinero que éste reclamaba. Cuando, posteriormente, el Estado reclamó por cobro de lo indebido contra el contratista, este Tribunal resolvió que el Gobierno pagó al demandado, no porque creyera que dichos cómputos eran correctos, sino porque aún creyéndolos erróneos, le urgía llegar a una transacción. En ese sentido, se resolvió entonces que:

> "En el caso de autos, como hemos dicho, el demandado pagó a sabiendas de que el error existía e inducido a ello por las razones de urgencia que explicó. No se pagó por error de hecho sino 'por mera liberalidad o por cualquier otro concepto,' ... ." *Pueblo* v. *Acevedo*, <u>ante</u>, pág. 479.

Si procedemos a comparar estos casos con el que hoy ocupa nuestra atención, <u>podremos observar una diferencia básica que reclama una solución diferente</u>. Como se puede apreciar de la descripción de los hechos que acabamos de hacer, en el caso de <u>American Railroad Company</u> y en el de <u>Acevedo</u>, las partes que realizaron el pago tenían <u>total conocimiento</u> al realizarlo de que podían estar cometiendo un error y, aún así, lo llevaron a cabo movidos por un interés especial. Es ése el contexto en el que adquiere sentido la norma de que quien conoce la verdad de los hechos no puede alegar que el pago se realizó por error en los mismos, sino que en tal supuesto debe entenderse que se pagó por cualquier otro concepto, que en los casos resumidos equivale a la urgencia de las transacciones.

Una situación muy distinta es la que observamos en los hechos del caso de autos. En éste, podría entenderse que también se realizó el pago conociendo la "verdad de los hechos", ya que el Departamento de

Salud pagó setenta y cuatro dólares ($74.00) aun cuando conocía, porque se le había notificado la resolución de la J.A.S.A.P. que lo dispuso, que su obligación se limitaba al pago de cuarenta y nueve dólares ($49.00).  <u>Pero</u>, a diferencia de los casos anteriores, en el que hoy nos ocupa, el Departamento de Salud no pagó conociendo que podría estar equivocado, y con el fin de dar cumplimiento a algún interés particular, <u>sino que procedió al pago en exceso por un mero error de trámite</u>.

Si equiparáramos el presente caso a los anteriores y resolviéramos que no cabe hablar tampoco aquí de error de hecho, <u>estaríamos propiciando un resultado contrario a toda la doctrina del cobro de lo indebido</u>.  Ello porque la misma se fundamenta en la necesidad de evitar el enriquecimiento injusto que se produce a favor de quien cobra aquello a lo que no tiene derecho sin que medie la mera liberalidad del pagador.[16]  Establecer, como pretenden los apelados, que el error de trámite cometido por la agencia no constituye un error de hecho significaría resolver que cualquier pago en exceso realizado por una equivocación mecánica debe favorecer a quien lo cobra sin tener ningún derecho a él.  En aras al fin superior de la Justicia, <u>esa solución no debe prevalecer</u>.[17]

---

[16]    Sobre el enriquecimiento injusto, nos dice Puig Brutau:

> "El enriquecimiento injusto, dice ÁLVAREZ CAPEROCHIPI, puede considerarse como un principio general de Derecho que informa todo el ordenamiento jurídico (y que es la otra cara del principio que obliga a dar a cada uno lo suyo), y como una acción que a través de la jurisprudencia se ha concretado hasta convertirse en una norma de aplicación inmediata. [Cita omitida]".  J. Puig Brutau, *Op. cit.*, pág. 44.

[17] Como segundo señalamiento de error, alega el apelante que el Tribunal de Circuito de Apelaciones debió aplicar al caso de autos el Artículo 1218 del Código Civil, 31 L.P.R.A. sec. 3405, que lee como sigue:

> "Para que el error invalide el consentimiento, deberá recaer sobre la sustancia de la cosa que fuere objeto del contrato, o sobre aquellas condiciones de la misma que principalmente hubiesen dado motivo a celebrarlo.
>
> El error sobre la persona sólo invalidará el contrato cuando la consideración a ella hubiere sido la causa principal del mismo.
>
> <u>El simple error de cuenta sólo dará lugar a su corrección</u>."  (Énfasis suplido.)

Dado que nuestro pronunciamiento respecto a este error no es susceptible de variar el resultado al que hemos llegado en este caso, a saber, la revocación de la

IV.

A tenor con todo lo expuesto, procede revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones, tomando como base el primer error alegado, cual fue resolver que los pagos en controversia fueron realizados por mera liberalidad y no por error de hecho y que, por lo tanto, no procedía la restitución al Departamento de Salud de todo lo pagado errónea e indebidamente a los empleados. Por el contrario, resolvemos que el error <u>de hecho</u> cometido por la agencia la faculta para reclamar, a los aquí apelados, los pagos realizados en exceso. Se dictará Sentencia de conformidad.

**FRANCISCO REBOLLO LOPEZ**
**Juez Asociado**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Sepúlveda Rivas y otros

    **Demandantes-apelados**

                                **AC-95-39**        **APELACIÓN**

      **vs.**

**Departamento de Salud**

    **Demandado-apelante**

---

sentencia del Tribunal de Circuito a base del primer error considerado, no procede que entremos a discutirlo en profundidad.

Ahora bien, por el carácter incongruente y poco meritorio de la alegación hecha por la parte, consideramos apropiado hacer un señalamiento breve al respecto. El Artículo 1218 del Código Civil, 31 L.P.R.A. sec. 3405, está pensado para ser aplicado a las relaciones contractuales. Esta disposición regula qué tipos de error invalidan el consentimiento prestado por una parte al obligarse contractualmente y, en ese sentido, establece que el mero error de cuenta no supondrá su invalidación sino que únicamente dará lugar a su corrección. De ello surge, obviamente, que este precepto no es aplicable a la situación de autos, en la que no existe ningún contrato y, por ende, ningún consentimiento prestado con la intención de obligarse bilateral o contractualmente. Así fue resuelto correctamente por el Tribunal de Circuito de Apelaciones.

SENTENCIA

**San Juan, Puerto Rico a 20 de mayo de 1998**

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia emitida en el presente caso por el Tribunal de Circuito de Apelaciones, en la cual se denegó al Departamento de Salud el derecho a recobrar unas cantidades de dinero que había pagado indebidamente a algunos de sus empleados.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señor Negrón García y señora Naveira de Rodón concurren en el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri emitió Opinión Concurrente.

**Isabel Llompart Zeno**
**Secretaria del Tribunal Supremo**