TEXTO COMPLETO DE LA SENTENCIA
En el presente caso no existe controversia de hecho; sólo nos corresponde resolver si la interpretación que hizo el Departamento de la Vivienda sobre el Artículo 7, inciso D del Reglamento 5898 para Establecer las Normas del Programa de Subsidio y Arrendamiento y de Mejoras para Vivienda a Personas de Mayor Edad con Ingresos Bajos es razonable. Por los fundamentos que expresaremos a continuación, resolvemos que no y, por ■consiguiente, revocamos la determinación recurrida.
I
Juan Carlos Albors Lahongrais, en adelante recurrente, es el presidente de Tax Credit Management, Inc., una corporación íntima organizada bajo las leyes del Estado Libre Asociado de Puerto Rico. Esta corporación a su vez es socia administradora de Lomas de Santa Marta Limited Partnership, una sociedad organizada bajo las leyes del estado de Delaware.
Mediante la Ley Núm. 173 de 31 de agosto de 1996, según enmendada, 17 L.P.R.A. see. 1491, se autorizó al Departamento de la Vivienda, en adelante Departamento, a crear un programa de subsidio para arrendamiento a personas de mayor edad. De conformidad, se creó el Programa de Arrendamiento para Viviendas a Personas de Mayor Edad con Ingresos Bajos, en adelante el Programa. El 20 de noviembre de 1998, el Departamento endosó la construcción de 132 unidades de vivienda en el proyecto Lomas de Santa Marta para participar de los beneficios del Programa. El 9 de noviembre de 2000, Juan Carlos Albors Lahongrais, recurrente, firmó un Contrato de Subsidio y Arrendamiento para Vivienda a Personas de Mayor Edad con Ingresos Bajos. De acuerdo con la cláusula XIV del contrato, relativa a quién puede ser elegible para el Programa, el “desarrollador”, o sea, Lomas de Santa Marta Limited Partnership, precualificaría a los arrendatarios del proyecto. La citada cláusula *840 dispone lo siguiente:

“-DÉCIMOCUARTA: Las unidades subsidiadas sólo podrán arrendarse a personas elegibles. El Desarrollador precualificará los candidatos a ser arrendatarios en el Proyecto de acuerdo con la Ley 173, supra y el Reglamento. Los arrendatarios en el Proyecto no tendrán ingresos mayores al sesenta porciento (60%,' de la mediana ( gross median income”). El “Desarrollador” o su agente administrador entrevistarán a los candidatos que precualifiquen y someterán la información a el “Departamento” que certificará la elegibilidad de los arrendatarios y así se formará la lista de espera. El contrato a suscribirse entre el “Desarrollador” y el arrendatario deberá cumplir con los requisitos del “Departamento”.[Énfasis en el original], ”

Unos años después, específicamente el 23 de febrero de 2005, y luego de una auditoría, la Oficina de Auditoría del Departamento produjo el Informe de Auditoría DV-AI-04-03, preparado por la Sra. Ana Ángeles Torres Castellanos. El citado informe contenía los hallazgos producto de la intervención que hiciera esta oficina al Proyecto Lomas de Santa Marta. El recurrente no estuvo de acuerdo con el hallazgo número 2 del informe, por considerar incorrecta la interpretación que hiciera la Oficina de Auditorías sobre el Artículo 7, inciso D del Reglamento 5898 para Establecer las Normas del Programa de Subsidio y Arrendamiento y de Mejoras para Vivienda a Personas de Mayor Edad con Ingresos Bajos, en adelante el Reglamento 5898.
El hallazgo numero 2, relativo al proceso de elegibilidad y titulado Otorgamiento de subsidio a participantes que sobrepasan los límites de ingresos, excluia a unos doce (12) participantes del Programa por sobrepasar los límites de ingreso establecidos para disfrutar del subsidio. Como consecuencia de lo anterior, el proyecto había facturado y cobrado $58,122.00 por subsidios a los doce (12) participantes sin que éstos cualificaran, convirtiendo el desembolso de la citada cantidad uno indebido por parte del Programa.
El recurrente cursó una carta al Sr. Jorge Uñarte González, Subdirector de la Oficina de Auditoría Interna, en la cual expuso su contención sobre la incorrección en que había incurrido la auditoría. Explicó que ésta tomó como elemento de elegibilidad el ingreso bruto de los doce participantes que ahora excluia, sin tomar en consideración el Artículo 7, inciso D del citado Reglamento 5898. No obstante, el 7 de junio de 2005, el Sr. Uñarte González confirmó las conclusiones del informe. El lero de diciembre de 2005 se celebró la vista administrativa solicitada por el recurrente ante la Oficina de Procedimiento Administrativo (OPA) de la Secretaría para Asuntos Legales del Departamento de la Vivienda. Ésta emitió la Resolución recurrida el 28 de febrero de 2006, mediante la cual validó la interpretación que hiciera la Oficina de Auditoría Interna del Artículo 7, inciso D del Reglamento 5898 y consecuentemente, ordenó que se prosiguieran los procedimientos del cobro del importe indebidamente pagado por el Departamento de la Vivienda.
Entendió la OPA que el recurrente no podía tomar en consideración las “deducciones y exenciones al ingreso expuestas en el articulado en controversia para computar el ingreso para cualificar de los solicitantes al Programa, ya que estas deducciones y exenciones se utilizarían únicamente para determinar el monto del subsidio.
Inconforme con el anterior resultado, recurre ante nos Juan Carlos Albors Lahongrais en representación de Mamas de Santa Marta Limited Partnershipy y Tax Credit Management. Señala que “[ejrró el Departamento de Vivienda al obviar el inciso D del Artículo Vil del Reglamento 5898 para determinar el ingreso para cualificar de los solicitantes al Programa de Subsidio de Arrendamiento”. Luego de varios incidentes procesales, entre los que se destacan la presentación de distintos escritos por las partes, estamos listos para resolver y así pasamos a nacerlo.
II
A
La naturaleza del presente caso, en cuanto sólo presenta una controversia de derecho, nos obliga a precisar el *841 ámbito y los límites de la revisión judicial de decisiones administrativas.
Reiteradamente se ha resuelto que las determinaciones de los organismos administrativos especializados merecen gran consideración y respeto. Misión Industrial de P.R. v. Junta de Calidad Ambiental, 145 D.P.R. 908 (1998). La Ley de Procedimiento Administrativo Uniforme, mejor conocida como LPAU, en su sección 4.5, establece los límites de la revisión judicial de decisiones administrativas y dispone que las determinaciones de hechos de las agencias serán sostenidas por el Tribunal si se basan en evidencia sustancial que obre en el expediente administrativo. 3 L.P.R.A. see. 2175. Por lo tanto, estamos obligados a sostener tales determinaciones si están respaldadas por evidencia suficiente que surja del expediente administrativo considerado en su totalidad. Misión Industrial de P.R. v. Junta de Calidad Ambiental, supra.
Sin embargo, las conclusiones de derecho de los organismos administrativos que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia concernida, son revisables en toda su extensión. Rivera Rentas v. A & C Development Corp., 144 D.P.R. 450 (1997). Como regla general, los tribunales deben darle peso a las interpretaciones que la agencia administrativa hace de aquellas leyes particulares que le corresponde poner en vigor, pero aun esta deferencia judicial al “expertise ” administrativo cede ante una actuación irrazonable o ilegal. T-JAC v. Caguas Centrum Limited, 148 D.P.R. 70 (1999).
En resumen, la revisión judicial de las determinaciones administrativas está limitada a determinar si la actuación administrativa fue razonable y cónsona con el propósito legislativo o si por el contrario fue irrazonable, ilegal o si medió abuso de discreción. T-JAC v. Caguas Centrum Limited, supra; Rivera Rentas v. A & C Development Corp., supra.
B
La Ley 173, supra, creó el Programa de Subsidio de Arrendamiento y de Mejoras para Vivienda a Personas de Mayor Edad con Ingresos Bajos con el fin de proveerle vivienda a este sector poblacional ante el aumento vertiginoso de sus integrantes y la disminución de ingreso que afrontaban las personas mayores de 65 años de edad. Exposición de Motivos de la Ley Núm. 173, supra. Con el propósito de establecer las normas de este programa, el 21 de diciembre de 1998 se aprobó el Reglamento número 5898.
En relación a la controversia que nos ocupa, el Artículo 7 del Reglamento 5898, relativo a la determinación del ingreso para cualificar, establece lo siguiente:

“Los ingresos para cualificar consistirán de:

Los ingresos que se anticipa recibirá el participante y su familia durante los doce (12) meses siguientes a la fecha de su admisión.

Se tomará en consideración todo ingreso por concepto de:

1. salario

2. ingresos por concepto de negocio propio

3. intereses y dividendos

4. pensiones

5. compensaciones

*842
6. ayuda económica gubernamental y familiar

C. Se excluyen los ingresos temporeros no recurrentes o esporádicos, tales como:

1. regalos especiales

2. herencias y pagos de seguros

3. ayuda económica del Programa de Asistencia Nutricional

D. Deducciones y exenciones al ingreso

1. gastos médicos - incluye gastos de medicamentos, costo de plan de salud y equipo recomendado por médico. Los gastos médicos se considerarán hasta un 50%.

2. utilidades - pago de agua, energía eléctrica, calentador de agua, nevera y estufa.

E. El ingreso consistirá de una doceava (1/12) parte del ingreso anual de la persona o familia, una vez se excluyan los ingresos temporeros no recurrentes y se deduzcan los gastos médicos y utilidades. El ingreso anual no podrá sobrepasar los límites por área establecidos (Anejo 1). ”

C
El Artículo 1795 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5121, recoge la figura doctrinal conocida como cobro de lo indebido. Dicho Artículo lee de la manera siguiente:

“Cuando se recibe alguna cosa que no había derecho a cobrar, y que por error ha sido-indebidamente entregada, surge la obligación de restituirla. ”

El Tribunal Supremo ha sostenido que bajo la doctrina del cuasicontrato contemplado en el Artículo 1795, supra, el que recibe alguna cosa, a la cual no tenía derecho a cobrar, y que por un error de hecho haya sido indebidamente pagada, tendrá la obligación de restituirla. Dicho pago tuvo que ser satisfecho indebidamente, por error de hecho o equivocación y no por mera liberalidad. Aulet v. Depto. Servicios Sociales, 129 D.P.R. 1 (1991). Diferente es la situación cuando el pago efectuado es consecuencia de un error de derecho. Cuando el pago es producto de un error de derecho, no procede la devolución de lo indebidamente pagado. Aulet v. Depto. Servicios Sociales, supra. El error de derecho ocurre cuando la persona que realiza el pago lo hace amparado en la creencia de que éste le es exigible en derecho, bien por desconocimiento de la norma que lo descarga del pago o por interpretación errónea del derecho aplicable. Sepúlveda v. Depto. de Salud, 145 D.P.R. 560 (1998) La doctrina del error de derecho exime a la persona que recibió el pago indebido de la devolución de lo pagado, aun cuando se trate de fondos públicos. Aulet v. Depto. Servicios Sociales, supra.
Ill
Alega el recurrente que erró el Departamento al obviar el inciso D del Artículo VII del Reglamento 5898 para determinar el ingreso para cualificar de los solicitantes al programa de subsidio de arrendamiento. Tiene razón. Somos del criterio que el Departamento hizo una determinación irrazonable, al obviar el texto claro de su Reglamento 5898. Veamos.
Como mencionáramos, no intervendremos con las interpretaciones que la agencia administrativa hace de aquellas leyes particulares que le corresponde poner en vigor, excepto si la agencia le diera una interpretación irrazonable a la ley o reglamento, como en el presente caso. En el caso ante nuestra consideración, el Departamento entendió que el inciso D del Artículo VII del Reglamento 5898 no era claro, y en vías de darle *843 una interpretación cónsona con los demás artículos del reglamento optó por tomar por referencia la norma establecida por el United States Department of Housing and Urban Development, también conocida como HUD para el año 2002 en el Home Program Income Limits. Éste toma el ingreso bruto como el ingreso máximo para cualificar. No obstante, esta interpretación que le diera el Departamento al Reglamento 5898, y en específico de su Artículo VII, era imposible concebirla ante el claro texto del articulado.
Por otra parte, surge del memorando que acompaña las tablas de HUD, que la utilización de los valores que se expresan en las tablas estará sujeto a las guías de cada programa individual. En lo que respecta al presente caso, el Reglamento 5898 adoptó su método de cualificar a los posibles participantes a través de su Artículo VII. Su explícito título: “Determinación del ingreso para cualificar” no deja espacio a la interpretación. El interpretar el articulado obviando su inciso D, de donde surgen una serie de deducciones y exenciones, para que sólo sean aplicables al momento de conceder el subsidio, no es una interpretación razonable.
Estamos de acuerdo con el planteamiento que hace el recurrente del artículo en controversia en cuanto expresa que para calcular el ingreso para cualificar se seguirán los pasos del artículo VII. Esto es, el ingreso consistirá de los ingresos que se anticipa recibirá el participante y su familia durante los doce (12) siguientes a la fecha de su admisión. Artículo VII, inciso A. Luego se tomará en consideración todo ingreso por concepto de salarios, negocio propio, pensiones, etc. Artículo VII, inciso B. Se excluirán los ingresos temporeros no recurrentes como las herencias, entre otros. Artículo VII, inciso C. Luego se harán las deducciones y exenciones al ingreso por concepto de gastos médicos y utilidades. Artículo VII, inciso D. Finalmente, el resultado obtenido se comparará con las tablas de HUD que se incluyeron como anejo I del Reglamento 5898. Artículo VII, inciso E. Ésta es la interpretación razonable del Artículo VII de acuerdo a su texto literal. Y es que, “[cjuando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu. ” Artículo 14, Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14.
Por otra parte, al analizar la controversia a la luz de la doctrina del cobro de lo indebido, concluimos que dicha doctrina no es de aplicación a los hechos ante nos. Veamos.
Como mencionáramos anteriormente, para que aplique la doctrina y surja la obligación de restitución, tiene que haber ocurrido un error de hecho. Éste se refiere a quien obra a base de unos hechos que no son los verdaderos o, si aun conociendo los hechos verdaderos, se produce una equivocación meramente formal o de trámite. Es decir, cuando se comete lo que popularmente se ha denominado un error humano. Sepúlveda v. Depto. de Salud, 145 D.P.R. 560, (1998). Como vemos, el error que puede dar lugar a la restitución no se dio en el presente caso. Lo que hizo el Proyecto Lomas de Santa Marta fue cualificar a los participantes del programa siguiendo la letra clara del Reglamento 5898.
Lo anterior encuentra apoyo en la posterior derogación del Reglamento 5898, mediante la aprobación, el 3 de octubre de 2006, del Reglamento 7233. En el nuevo reglamento se expone con claridad que los gastos médicos y utilidades que se incluian en el inciso D del Artículo VII como deducciones y exenciones en el derogado reglamento, ahora se tomarán en consideración sólo al momento de determinar el subsidio para el arrendamiento. Para una mejor comprensión transcribimos los Artículos VII y VIII del nuevo reglamento:

“ARTÍCULO VII - DETERMINACIÓN DEL INGRESO PARA CUALIFICAR

Para determinar el ingreso que recibe una persona de edad avanzada que solicite los beneficios del Programa se ■tomará en consideración lo siguiente:

A. Los ingresos que se anticipa recibirá el solicitante y su familia durante los doce (12) meses siguientes a la fecha de solicitud.

*844
B. Se tomará en consideración todo ingreso por concepto de:

1. Salarios, pensiones, bonificaciones, comisiones y toda compensación por concepto de servicios personales y/o profesionales.

2. Intereses, dividendos y todo ingreso recibido por venta o alquiler de propiedades.

3. Retiro de dinero o activos por concepto de inversiones.

4. Pagos recibidos por concepto de Seguro Social, anualidades, pólizas de seguros, fondos de retiro, lotería, incapacidad y beneficio por concepto de muerte de unfamiliar.

5. Herencias

6. Ayuda económica gubernamental y familiar

C. Se excluyen los ingresos temporeros no recurrentes o esporádicos, tales como:

1. Regalos especiales

2. Ayuda económica del Programa de Asistencia Nutricional

3. Bonos de medicamentos

4. Bono de Medicinas del Sistema de Retiro del Gobierno de Puerto Rico y la Asociación de Empleados del Estado Libre Asociado de Puerto Rico.

ARTÍCULO VIII-DETERMINACIÓN DEL SUBSIDIO PARA ARRENDAMIENTO

A. Para fines de determinar los subsidios para los que cualifica un participante, se deducirán del ingreso anual bruto las partidas que se disponen a continuación:

1. Gastos médicos - incluye gastos de medicamentos, costo de plan de salud, pago de deducibles y equipo recomendado por un médico. Los gastos médicos serán deducidos en un 50%.

2. Utilidades - Se deducirá en un 100% los gastos que incurre el participante por concepto de pago de agua, energía eléctrica y por la compra de calentador de agua (si aplica), nevera y estufa.

B. El ingreso anual ajustado de un participante para fines de determinar la cantidad del subsidio, consistirá de una doceava (1/12) parte del ingreso anual de la persona o familia, una vez se excluyan los ingresos temporeros no recurrentes según dispuesto en el Artículo Vil de este Reglamento y se deduzcan los gastos médicos y utilidades (evidenciados).

C.[...]

D. (...)

E. [...]”.

Como vemos, el nuevo reglamento adoptó la Interpretación que hizo el Departamento del viejo reglamento *845 en el presente caso. Es a partir del nuevo reglamento que dicha interpretación cobra vigencia, no antes. Si confirmáramos la interpretación que diera el Departamento al Artículo VII del Reglamento 5898, estaríamos autorizando la aplicación retroactiva del nuevo reglamento, situación que está proscrita en nuestro ordenamiento jurídico. Ello, en virtud del Artículo 3 del nuestro Código Civil, 31 L.P.R.A. see. 3, que dispone:

“Las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario. ”

Por los fundamentos antes expuestos, se revoca la resolución recurrida emitida el 28 de febrero de 2006 que sostuvo la interpretación del Artículo VII del Reglamento 5898 que se hiciera en el Informe de la Oficina de Auditoría Interna del Departamento de la Vivienda. Como resultado de lo anterior, se deja sin efecto el hallazgo número dos (2) de dicho informe, donde se determinó que el Proyecto Lomas de Santa Marta había facturado y cobrado la cantidad de $58,122.00 en exceso, por subsidios a participantes que no cualificaban, por lo que procedía su devolución.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria.
Mildred I. Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones