

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Estado Libre Asociado de Puerto Rico<br><br>        Recurrido<br><br>            v.<br><br>Hon. Bernardo Negrón Montalvo y Rosa E. Rodríguez Martínez, por sí y como representación de la Sociedad Legal de Gananciales compuesta por ambos; Asamblea Municipal de Villalba, representada por su presidente David Albino Rolón; Municipio de Villalba, representado por su alcalde Orlando Torres González Sutano(a) de Tal<br><br>        Peticionarios | Certiorari<br><br>2012 TSPR 18<br><br>184 DPR ____ |

Número del Caso: CC-2008-975

Fecha: 27 de enero de 2012

Tribunal de Apelaciones:

        Región Judicial de Ponce Panel XI

Juez Ponente:

        Hon. Troadio González Vargas

Abogados de la Parte Peticionaria:

        Lcdo. Wilfredo Santos López
        Lcdo. Gamalier Pagán Marín
        Lcdo. Basilio Torres Colón

Oficina de la Procuradora General:

        Lcda. Irene Soroeta Kodesh
        Procuradora General

        Lcdo. Zaira Z. Girón Anadón
        Subprocuradora General

        Lcdo. Guillermo Mangual Amador
        Procurador General Auxiliar

Materia: Sentencia Declaratoria, Pago Indebido de Fondos Públicos y Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>BERNARDO NEGRÓN MONTALVO Y ROSA E. RODRÍGUEZ MARTÍNEZ, por sí y como representantes de la SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; ASAMBLEA MUNICIPAL DE VILLALBA, representada por su presidente DAVID ALBINO ROLÓN; MUNICIPIO DE VILLALBA, representado por su alcalde ORLANDO TORRES GONZÁLEZ; SUTANO(A) DE TAL<br><br>Peticionarios | **Núm.** CC-2008-975 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 27 de enero de 2012.

A través del presente recurso se nos plantea si es mandatorio, como paso previo a conceder un aumento de sueldo a un alcalde, aprobar un reglamento que rija el proceso correspondiente. Igualmente, se cuestiona la aplicación a dicho proceso de unos criterios mínimos de evaluación plasmados en el Artículo 3.012 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico (Ley de Municipios Autónomos).[1] Acuden ante nos, mediante dicho recurso, el Sr. Bernardo Negrón Montalvo

_____

[1] Ley Núm. 81-1991 (21 L.P.R.A. sec. 4112 (2005)), según enmendada por la Ley Núm. 36-1995.

(Sr. Negrón), ex alcalde del Municipio de Villalba, su señora esposa, la Sociedad Legal de Gananciales compuesta por ambos, el Municipio de Villalba (Municipio) y la Asamblea Municipal de Villalba (Asamblea Municipal) (en conjunto, los peticionarios). Éstos sostienen que erró el Tribunal de Apelaciones (TA) al revocar la determinación del Tribunal de Primera Instancia (TPI), mediante la cual el foro primario desestimó la Demanda sobre sentencia declaratoria, pago indebido de fondos públicos y cobro de dinero, instada por el Estado Libre Asociado de Puerto Rico (Estado) en su contra cuestionando el aumento de sueldo concedido al Sr. Negrón.

De otra parte, y de determinarse que al conceder los aumentos de sueldo la Asamblea Municipal no cumplió con los requisitos establecidos en la ley, es menester resolver si procede la restitución de dichos fondos públicos. Del mismo modo, debemos auscultar si los tribunales inferiores tenían jurisdicción para atender el asunto planteado y si el Estado poseía legitimación activa para instar la presente acción.

## I.

El 13 de marzo de 1997 la Asamblea Municipal aprobó la Ordenanza Número 43, Serie 1996-97 (Ordenanza 43), disponiendo un aumento de ochocientos dólares ($800.00) mensuales al sueldo del Sr. Negrón, entonces alcalde del Municipio. Posteriormente, el 9 de abril de 1997 se

enmendó la Sección 1 de dicha Ordenanza, por medio de la Ordenanza Núm. 46, Serie 1996-97 (Ordenanza 46), para incrementar la paga del alcalde nuevamente en doscientos dólares ($200.00) adicionales, para un total en aumentos de salario de mil dólares ($1,000.00) mensuales. Ap. 249 y 254, Recurso Apelación-TA.

Transcurridos varios años, la Oficina del Contralor de Puerto Rico (Contralor) realizó una auditoría sobre las operaciones fiscales del Municipio para el periodo comprendido entre el 1 de julio de 1996 al 30 de junio de 1999. Como producto de dicha auditoría, el 26 de febrero de 2001 se rindió el Informe de Auditoría M-01-28 (Informe). Ap. 9-79, Recurso Apelación-TA. Entre los hallazgos, los auditores mencionaron que los aumentos de sueldo concedidos al Sr. Negrón allá para el año 1997, por medio de las Ordenanzas 43 y 46, se habían aprobado sin considerar los estados financieros auditados del Municipio, sin indicar los criterios que se tomaron en cuenta para conceder dichos aumentos y sin aprobar un reglamento que guiara los procesos relativos a la determinación del nuevo salario, todo esto en contravención con lo dispuesto en el Artículo 3.012 de la Ley de Municipios Autónomos. Ap. 48, Recurso Apelación-TA. Basado en dichos hallazgos, recomendaron que se evaluara la legalidad de las ordenanzas pertinentes y que se requiriera el cumplimiento con el esquema normativo

pautado en la Ley de Municipios Autónomos.   Ap. 21-26, Recurso Apelación-TA.

Luego de advenir en conocimiento y evaluar los resultados de la auditoría realizada por el Contralor, el 20 de mayo de 2004 el Estado instó una Demanda sobre sentencia declaratoria, pago indebido de fondos públicos y cobro de dinero ante el TPI.   Adujo que las actuaciones de la Asamblea Municipal al concederle los aumentos de sueldo al Sr. Negrón —sin haber aprobado un reglamento para esos efectos y sin haber tomado en consideración los criterios establecidos en el Artículo 3.012 de la Ley de Municipios Autónomos— resultaban nulas, ilegales y contrarias a derecho.   Basado en dicho planteamiento, sostuvo que mediante los aludidos aumentos el Sr. Negrón había cobrado de forma indebida e ilegal la suma de cincuenta y tres mil doscientos treinta dólares ($53,230.00).   Asimismo, solicitó al TPI que declarara nulas, ilegales y contrarias a derecho las Ordenanzas 43 y 46 y, como resultado, resolviera que los aumentos otorgados y desembolsados mediante las referidas ordenanzas constituían pagos indebidos e ilegales de fondos públicos.   Solicitó, además, que como consecuencia de lo esbozado anteriormente, condenara al Sr. Negrón, a su señora esposa y a la Sociedad Legal de Gananciales compuesta por ambos, al reembolso de los cincuenta y tres mil doscientos treinta dólares ($53,230.00), así como cualquier otra suma que hayan cobrado en virtud de los aumentos impugnados, en

adición a los intereses legales aplicables y las costas, gastos y honorarios de abogado. Ap. 1-8, Recurso Apelación-TA.

Luego de varios trámites procesales, el TPI celebró el juicio en su fondo los días 9, 10 y 31 de mayo de 2007. Al mismo comparecieron todas las partes representadas por sus respectivos abogados y tuvieron amplia oportunidad de presentar evidencia testifical y documental. En el juicio, quedó establecido que efectivamente al momento de aprobarse las ordenanzas que concedieron el aumento de sueldo al Sr. Negrón para el año 1997, la Asamblea Municipal no contaba con un reglamento para regir dicho proceso. En cuanto al cumplimiento con los criterios establecidos en el Artículo 3.012 de la Ley de Municipios Autónomos, el Estado presentó prueba para demostrar que no se tomaron en cuenta todos los criterios enumerados en dicho artículo, mientras los peticionarios sometieron evidencia para establecer justamente lo contrario.

El 9 de agosto de 2007 el TPI emitió Sentencia, mediante la cual dictaminó que el lenguaje del Artículo 3.012 de la Ley de Municipios Autónomos es claro y mandatorio al disponer que la Asamblea Municipal tiene que aprobar un reglamento para guiar el proceso de aumento de sueldo, antes de conceder el mismo. Resolvió, no obstante, que por el mero hecho de no existir un reglamento no se invalidaban *ipso facto* las ordenanzas municipales, ni se convertían en ilegales o improcedentes

los aumentos concedidos. Apoyó su decisión en la premisa de que el mismo artículo que requiere la aprobación del reglamento, establece a su vez unos criterios mínimos a considerar al momento de determinar el salario a devengar por el alcalde. Dado el hecho de que el tribunal entendió que la prueba desfilada en el juicio había demostrado que la Asamblea Municipal tomó en consideración todos los criterios preceptuados en el antedicho artículo previo a aprobar las Ordenanzas 43 y 46, el foro primario concluyó que las mismas eran válidas y legales,[2] por lo que no procedía la devolución del dinero recibido por el Sr. Negrón en concepto de aumento de sueldo. Como resultado de lo anterior, desestimó la Demanda incoada por el Estado. Ap. 3-9.

Inconforme con dicha determinación, el Estado recurrió ante el TA. Alegó, en síntesis, que erró el foro primario al desestimar su Demanda, a pesar de que tanto la prueba testifical como la documental demostró que la Asamblea Municipal no había tomado en consideración todos y cada uno de los criterios específicamente establecidos en el Artículo 3.012 de la Ley de Municipios Autónomos, antes de aprobar el aumento de sueldo al entonces alcalde.

---

[2]     En su Sentencia, el TPI expresó que entre los criterios considerados por la Asamblea Municipal para conceder el aumento de sueldo se encontraban: "[e]l informe de presupuesto y último "single audit" disponible del Municipio; la preparación del alcalde y la complejidad de sus deberes, responsabilidades y funciones; las inversiones y empleos que se podían traer al Municipio, los servicios provistos a la comunidad y el desarrollo económico que había experimentado en aquel entonces el Municipio; así como todos los factores y criterios que disponía el artículo 3.012 de la Ley de Municipios Autónomos, para evaluar y establecer el sueldo a devengar por el alcalde".

El 13 de febrero de 2008 el Municipio presentó su oposición al recurso. Manifestó que del testimonio del Sr. José J. Flores Falcón (Sr. Flores), entonces Presidente de la Asamblea Municipal, se desprendía que los miembros de la Asamblea Municipal habían tomado en consideración en caucus y en asamblea los criterios dispuestos en la Ley de Municipios Autónomos para concederle el aumento de sueldo al Sr. Negrón.[3] Adujeron en la alternativa que, de todos modos, la Ley de Municipios Autónomos no prohíbe aumentos de sueldo en el supuesto de que no se cumpla con todos los criterios expresados en el Artículo 3.012 de dicho cuerpo legal. Expusieron, además, que dado que el propio artículo dispone cuáles son los criterios a tomar en consideración al conceder el aumento de sueldo, el no haber aprobado un reglamento con anticipación no provocó daños ni la nulidad de lo actuado.

Argumentaron, además, que tomando en cuenta que mediante el pleito de autos se estaba cuestionando el desembolso de fondos que pertenecen al patrimonio municipal, le correspondía al Municipio y no al Estado instar la presente acción, por lo que éste último carecía de legitimación activa. Por último, plantearon que de ser ciertas las alegaciones de la Demanda, el error cometido se consideraría como un error de derecho, por lo que según

---

[3] Según se desprende de la transcripción de la vista celebrada el 10 de mayo de 2007.

el estado de derecho vigente para ese entonces, el mismo no provocaría la restitución de los fondos.[4]

Luego de considerar los planteamientos de las partes, el TA revocó la determinación del foro primario. Resolvió que del Artículo 3.012 de la Ley de Municipios Autónomos claramente se desprende la exigencia de aprobar un reglamento previo a establecer o aumentar el sueldo del alcalde. Especificó que el reglamento que para tales efectos se apruebe, debe incluir disposiciones necesarias para que los asambleístas municipales entren a evaluar todos los criterios comprendidos en la ley, así como cualquier otro factor adicional que la legislatura municipal estime pertinente.

Concluyó que, en el presente caso, la omisión de redactar un reglamento y, por consiguiente, la ausencia de procedimientos que guiaran la evaluación del aumento de sueldo del alcalde, convirtió la acción de la Asamblea Municipal en una nula e ineficaz. En su consecuencia, anuló el aumento de sueldo concedido al entonces alcalde de Villalba y ordenó el reembolso a las arcas municipales de los fondos públicos desembolsados en exceso. Reconoció, además, la legitimación del gobierno central de intervenir con el uso y disposición de los fondos municipales y la facultad que posee de velar por la adecuada y correcta administración de los mismos.

_____

[4]    Los demás peticionarios adoptaron por referencia básicamente los mismos planteamientos de derecho esgrimidos por el Municipio.

Es de esta determinación que los peticionarios acuden ante este Foro, aduciendo que el tribunal apelativo intermedio cometió los siguientes errores:

PRIMER ERROR: Erró el Honorable Tribunal de Apelaciones al no considerar el planteamiento, válido en derecho, de que no existía ni existe jurisdicción para atender el reclamo del Estado Libre Asociado de Puerto Rico.

SEGUNDO ERROR: Erró el Honorable Tribunal de Apelaciones al resolver que el Estado Libre Asociado de Puerto Rico tiene legitimación activa para incoar la acción civil.

TERCER ERROR: Erró el Honorable Tribunal de Apelaciones al resolver que la Asamblea Municipal de Villalba, en ausencia de un reglamento, estaba impedida de actuar sobre el sueldo del alcalde aún cuando la actuación se fundamentó en la opinión de la Oficina Central de Asuntos Municipales, brazo del [E]stado con inherencia exclusiva en los municipios y se tomaron en cuenta los criterios dispuestos en ley para la aprobación de aumentos de sueldo al señor Alcalde.

CUARTO ERROR: Erró el Honorable Tribunal de Apelaciones al no concluir que siendo, en la alternativa, un error de derecho no procede restitución.

QUINTO ERROR: Erró el Honorable Tribunal de Apelaciones al no dar la debida deferencia a la determinación de credibilidad concedida por el Tribunal de Primera Instancia a los testimonios vertidos.

Examinada la petición de *certiorari* decidimos expedir el recurso solicitado y contando con la comparecencia de ambas partes procedemos a resolver.

## II.

### A.

**LEGITIMACIÓN ACTIVA DEL ESTADO**

La jurisdicción es la autoridad que posee un tribunal para considerar o decidir un caso o controversia. Solá

Gutiérrez v. Bengoa Becerra, 2011 T.S.P.R. 119, 182 D.P.R.
____ (2011). Además de auscultar los aspectos de
jurisdicción sobre la persona y sobre la materia, los
tribunales tenemos la delicada tarea de examinar, entre
otros factores, la legitimación que posee la parte que
comparece ante nos, como mecanismo para delimitar dicha
jurisdicción. Tomando en consideración que en los dos
primeros señalamientos de error se está cuestionando tanto
la jurisdicción sobre la cuestión planteada como la
legitimación activa de la parte que instó la acción,
decidimos resolver en primera instancia y en conjunto los
señalamientos presentados en el primer y segundo error.[5]

Según hemos expresado en ocasiones anteriores, el
cargo de Contralor fue creado constitucionalmente para
fiscalizar todos los ingresos, cuentas y desembolsos del
Estado, de sus agencias e instrumentalidades y de los
municipios con el fin de determinar si los mismos se han
hecho de conformidad con la ley. Art. III, Sec. 22,
Const. E.L.A., L.P.R.A., Tomo 1; Asoc. Alcaldes v.
Contralor, 176 D.P.R. 150, 159-160 (2009). Con el
propósito de implantar dicho mandato constitucional, la
Ley Núm. 9 de 24 de julio de 1952, 2 L.P.R.A. sec. 71, et
seq. (2009), según enmendada, creó la Oficina del
Contralor de Puerto Rico, mediante la cual se le confirió

---

[5] A pesar de que los peticionarios levantaron como primer error el asunto
de la falta de jurisdicción y como segundo error lo atinente a la legitimación
activa del Estado, hemos decidido invertir el orden y atender primeramente lo
relativo a la legitimación activa.

al Contralor los mecanismos para poder llevar a cabo dichas investigaciones sobre las cuentas y los desembolsos de todos los fondos públicos. E.L.A. v. Asoc. Empleados Obras Púb. Mun., 126 D.P.R. 320, 327 (1990). Dichas intervenciones del Contralor se realizan una vez los fondos públicos han sido desembolsados, de modo que se pueda evaluar la legalidad y prudencia en la administración y utilización de los mismos. Asoc. Alcaldes v. Contralor, *supra*, a la pág. 160; RDT Const. Corp. v. Contralor I, 141 D.P.R. 424, 431 (1996).

No obstante, ni la Constitución ni la legislación autorizan al Contralor a tramitar las acciones que surjan de sus investigaciones, razón por la cual la Asamblea Legislativa promulgó la Ley Núm. 17 de 8 de mayo de 1973,[6] 3 L.P.R.A. ant. sec. 136 (1998), según enmendada (Ley 17), predecesora de los Artículos 48-50 de la vigente Ley Núm. 205-2004 (3 L.P.R.A. secs. 294-294b (2009)), conocida como

---

[6]    La Ley 17 dispone lo siguiente en su parte pertinente:

(a) Se crea la Oficina de Asuntos del Contralor adscrita al Departamento de Justicia. Dicha Oficina funcionará bajo la supervisión general del Secretario de Justicia, pero su dirección inmediata estará a cargo de un Director nombrado por el Secretario de Justicia.

(b) Las funciones de la Oficina de Asuntos del Contralor serán las de instar ante los tribunales de justicia toda acción civil o criminal que surja como resultado de cualquier intervención del Contralor en relación con los ingresos, cuentas y desembolsos del Estado, sus agencias, instrumentalidades y municipios, de acuerdo con la Constitución, y representar al Estado Libre Asociado, a nombre del Secretario de Justicia en tales acciones. Además, la Oficina brindará al Contralor toda la colaboración que sea necesaria, durante los procesos investigativos que él lleve a cabo sin necesidad de esperar la rendición de informes finales de dichas investigaciones.
                                    ....

"Ley Orgánica del Departamento de Justicia",**7** con el fin de conferirle al Departamento de Justicia la facultad de encauzar las acciones civiles y criminales que surjan como resultado de las intervenciones del Contralor en relación con los ingresos, cuentas y desembolsos gubernamentales, incluyendo los de los municipios. Asoc. Alcaldes v. Contralor, *supra*, a la pág. 161; E.L.A. v. Asoc. Empleados Obras Púb. Mun., *supra*, a las págs. 327-328.    Al Secretario de Justicia se le confiere dicha encomienda con la finalidad de que éste ayude en la delicada tarea de salvaguardar la honestidad administrativa y preservar la legalidad en el manejo de los fondos públicos. H.M.C.A. (P.R.), Inc., etc. v. Contralor, 133 D.P.R. 945, 963 (1993).

---

**7**     El Artículo 48 de la Ley Orgánica del Departamento de Justicia, *supra*, dispone como sigue en su parte pertinente:

Artículo 48. — Creación.  Director

Se crea la Oficina de Asuntos del Contralor en el Departamento, la cual funcionará bajo la supervisión general del Secretario y la dirección inmediata de un Director designado por el Secretario.

....

Asimismo, el Artículo 49 dispone lo siguiente:

Artículo 49. — Funciones

La Oficina de Asuntos del Contralor tendrá las siguientes funciones:

....

(d) Realizar cualquier otra gestión o instar aquellas acciones que el Secretario determine relacionadas con los resultados de las intervenciones del Contralor de Puerto Rico respecto a los ingresos, cuentas, desembolsos y bienes del Estado Libre Asociado, sus agencias, instrumentalidades, corporaciones públicas y municipios, de acuerdo con las leyes y la Constitución del Estado Libre Asociado.

Mediante el anterior esquema los auditores y empleados de la Oficina del Contralor intervienen, supervisan y detectan si se ha cometido alguna irregularidad en cuanto al uso de los fondos públicos y refieren, posteriormente, sus hallazgos al Secretario de Justicia para que sea éste quien tome las acciones legales pertinentes. Sin embargo, aun cuando el Contralor tiene la facultad de presentar dichos informes a las agencias del gobierno y solicitar que éstas, a su vez, evalúen si procede instar alguna acción civil y/o criminal, es en dichas agencias e instrumentalidades en quien, en última instancia, recae el deber de decidir si, a la luz de los hechos y de los hallazgos, corresponde iniciar procedimientos judiciales. Asoc. Alcaldes v. Contralor, *supra*, a las págs. 161-162.

Complementando la función fiscalizadora del Contralor de velar por la adecuada y legítima utilización de los fondos públicos, el Artículo VI de nuestra Constitución dispone en su Sección 9 que: "Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley." Art. VI, Sec. 9, Const. E.L.A., L.P.R.A., Tomo I, ed. 2008, pág. 429. Dicho mandato constitucional obliga a todo organismo gubernamental, tanto a nivel estatal como municipal, a velar y asegurar el desembolso legítimo de todos los fondos públicos.

En E.L.A. v. Soto Santiago, 131 D.P.R. 304 (1992), le reconocimos legitimación al Estado para iniciar una acción, conforme a la Ley 17, con el fin de recobrar unos fondos públicos ilegalmente sustraídos por un empleado municipal.  Se fundamentó dicha facultad en el mandato constitucional contenido en el Art. VI, Sección 9 de la Const. ELA, *supra*.

Posteriormente, en E.L.A. v. Cole, 164 D.P.R. 608 (2005), el Estado presentó una Demanda en cobro de fondos públicos contra el Comité Local Municipal (Comité) del Partido Popular Democrático (PPD) en Mayagüez  y contra el entonces alcalde de dicho municipio, el Sr. Benjamín Cole Vázquez (Cole Vázquez),[8] al advenir en conocimiento de los resultados de una investigación realizada por la Oficina del Contralor sobre las operaciones fiscales del mencionado municipio.  En la Demanda se reclamó el reembolso al erario de unos fondos municipales ilegalmente pagados a un empleado municipal que estuvo realizando labores en el Comité mientras cobraba su sueldo de los fondos del municipio.

Luego de determinar que el PPD se había enriquecido injustamente de los fondos desembolsados por el municipio para el pago del empleado y que, por lo tanto, tenía que restituir los mismos, reiteramos la capacidad del Estado

---

[8]    Posteriormente, se enmendó la Demanda para incluir como demandados al PPD y al Municipio de Mayagüez y desistir de la Demanda en contra de Cole Vázquez en su carácter personal.

para entablar demandas como la del presente caso, a base de los resultados de investigaciones realizadas por la Oficina del Contralor. Recalcamos que el Estado tiene una obligación constitucional de velar por la más sana y recta administración de los fondos públicos, tanto estatales como municipales, para así salvaguardar los intereses de todos los ciudadanos de Puerto Rico. E.L.A. v. Cole, *supra*, a la pág. 644.

Reproducimos además, en dicho caso, nuestras expresiones anteriores relativas a que: "el manejo prudente de fondos públicos está saturado de intereses de orden público, sin que importe la cuantía involucrada". E.L.A. v. Cole, *supra*, a la pág. 643. Basado en dicha premisa reconocimos que el Estado tiene la potestad de incoar acciones en reclamo de fondos públicos, tanto estatales como municipales, que hayan sido ilegalmente desembolsados y de lograr que los mismos reviertan a su fuente de origen, ya sea a las arcas del gobierno central o de los gobiernos municipales. Íd. a la pág. 643.

Un examen detenido de los hechos del presente caso, de la ley aplicable y de la jurisprudencia interpretativa nos convence que el Estado cuenta con legitimación activa para instar la acción de autos solicitando se declaren ilegales los desembolsos de los fondos públicos municipales recibidos por el Sr. Negrón en concepto de aumentos de sueldo y se ordene la restitución de los mismos.

Tomando en consideración que constituye una clara política pública la de promover y velar por la más sana y recta administración de los fondos públicos, tanto estatales **como municipales**, no encontramos impedimento alguno para que el Estado, en cumplimiento con su deber constitucional, inste las acciones pertinentes en protección de dichos fondos, tal y como lo hizo en la presente situación de hechos. Después de todo, no hace diferencia a la hora de reclamar ilegalidad en el dispendio si los fondos son estatales o municipales, pues en ambos casos se trata de fondos públicos.

En lo aquí pertinente, los desembolsos de los fondos en concepto de aumentos de sueldo concedidos al Sr. Negrón estuvieron apoyados en una ordenanza municipal ineficaz, según explicamos más adelante. Tratándose de un desembolso ilegal de fondos públicos, le reconocemos plena capacidad al Estado para instar la acción en el caso de autos.

Como bien mencionáramos en la nota al calce número 24 de <u>E.L.A. v. Cole</u>, *supra*:

> Resolver de otra manera implicaría que en todo caso en que un alcalde participe en un esquema indebido, en que ocurre una erogación ilegal de fondos públicos municipales, y éste se niega a instar la acción correspondiente, dichos fondos no podrían ser recobrados. Es por ello que el E.L.A., *necesariamente*, tiene capacidad (*standing*) para instar en el presente caso la acción de recobro de fondos públicos ilegalmente desembolsados, contra la parte que ilegalmente se benefició de dicho desembolso, en representación de los ciudadanos de dicha municipalidad; ello en cumplimiento del mandato constitucional contenido en la Sec. 9 del Art. VI de

la Constitución del Estado Libre Asociado de Puerto
Rico, ante.

(Énfasis en el original).

Basado en lo anterior, concluimos que no erró el TA al reconocerle legitimación al Estado para incoar la presente acción civil, pues después de todo, aun cuando se trataba de fondos municipales, los mismos son fondos públicos, por lo que el Estado viene igualmente obligado a velar por la sana y recta administración de los mismos.[9]

**B.**

### ARTÍCULO 3.012 DE LA LEY DE MUNICIPIOS AUTÓNOMOS-REQUISITOS EN LEY PARA CONCEDER AUMENTO DE SUELDO A UN ALCALDE

La Ley Núm. 36 de 13 de abril de 1995 (Ley 36), enmendó la Ley de Municipios Autónomos para añadir, entre otros asuntos, los requisitos procesales para conceder aumentos de sueldo a los alcaldes.  Dicha normativa está

---

[9]      Cabe señalar que los peticionarios alegaron que en virtud del término de veinte (20) días que concede el Artículo 15.002 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4702 (2005), para cuestionar las gestiones municipales, no existía ni existe jurisdicción sobre la materia para atender los reclamos del Estado.  No obstante, es menester recordar que el Artículo 4 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4 (1993), dispone que los actos ejecutados contra lo dispuesto en la ley son nulos.  La nulidad de dichos actos convierte a los mismos en inexistentes.  Por lo tanto, no pueden ser objeto de confirmación ni de prescripción sanatoria alguna, pudiéndose instar acción de impugnación contra éstos en cualquier momento.  Véanse, por ejemplo, Ríos v. Municipio Isabela, 159 D.P.R. 839, 849 (2003); Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225, 239 (2001); Montañez v. Policía de Puerto Rico, 150 D.P.R. 917, 921 (2000); Atanacia Corp. v. J.M. Saldaña, Inc., 133 D.P.R. 284, 301 (1993); V.O. Ind. Corp. v. Komodidad Dist., Inc., 131 D.P.R. 261, 273 (1992); Millán v. Caribe Motors Corp., 83 D.P.R. 494, 504 (1961); y Sucn. Ramírez v. Tribl. Superior, 81 D.P.R. 357, 363 (1959).

Al aprobarse las Ordenanzas 43 y 46 sin cumplirse con los trámites dispuestos en la Ley de Municipios Autónomos, las mismas se consideran nulas por ser contrarias a derecho.  Dado que la prescripción no corre contra lo inexistente, el Estado podía haber instado la acción solicitando la nulidad de las ordenanzas en cualquier momento.  Concluimos, por lo tanto, que no erró el TA al reconocer que tenía jurisdicción para atender el reclamo del Estado, al tratarse el presente caso de la impugnación de un acto nulo, para lo cual nuestro ordenamiento jurídico no dispone de un término de prescripción.

recogida en el Artículo 3.012 de la Ley de Municipios Autónomos y dispone lo siguiente en su parte pertinente:

> La Legislatura Municipal **aprobará**, con el voto de dos terceras partes de los miembros del cuerpo, el reglamento que regirá los procedimientos de evaluación, determinación y adjudicación, del sueldo del alcalde.
>
> Al considerar aumentos de salarios para el alcalde, la Legislatura **tomará** en consideración, entre otros, que dicho cuerpo encuentre necesarios, los siguientes criterios:
>
> (1) El presupuesto del municipio y la situación fiscal de los ingresos y gastos reflejados en los informes de auditoría o *single audit*.
>
> (2) La población y el aumento en los servicios a la comunidad.
>
> (3) El cumplimiento con los controles fiscales y administrativos establecidos por O.C.A.M., la Oficina del Contralor y el gobierno federal.
>
> (4) La complejidad de las funciones y responsabilidades del Primer Ejecutivo.
>
> (5) El costo de vida, información que deberá suplir la Junta de Planificación a solicitud de la Legislatura Municipal.
>
> (6) La habilidad de atraer capital y desarrollo económico al respectivo municipio.
>
> (7) Tomar en cuenta los sueldos devengados por los miembros de la Asamblea Legislativa y los Secretarios del Gabinete Constitucional.

(Énfasis nuestro y en original).

Al examinar el historial legislativo de la Ley 36, específicamente en lo relativo al Artículo 3.012, notamos que el propósito de la Asamblea Legislativa al promulgar dicho precepto fue establecer unas guías generales a ser evaluadas por las legislaturas municipales al considerar aumentos de sueldo para los alcaldes. E.L.A. v. Crespo Torres, 180 D.P.R. 776, 789 (2011). Tomando dicha postura

en consideración hemos resuelto que al considerar incrementos en la paga de los alcaldes las legislaturas municipales deben cumplir con los criterios guías que establece la Ley de Municipios Autónomos en el mencionado Artículo. Aclaramos, sin embargo, que dichos criterios constituyen un listado mínimo y no taxativo, pudiendo los legisladores tomar en consideración cualquier otro factor que estimen pertinente. La determinación de si se cumplió o no con los parámetros necesarios para otorgar un aumento de salario estará basada en un análisis de razonabilidad. Íd. a la pág. 790.

De otra parte, la Ley de Municipios Autónomos también es clara al requerir la adopción de un reglamento para regir los procesos de evaluación, determinación y adjudicación del sueldo del alcalde. De ese modo, recientemente en E.L.A. v. Crespo Torres, *supra*, a la pág. 798, establecimos que cualquier incremento en el salario de un alcalde tiene que estar precedido por la aprobación de un reglamento, según requerido por ley.

Por ende, surge tanto de la letra clara de la ley, así como de lo resuelto mediante opinión en E.L.A. v. Crespo Torres, *supra*, que al aprobar aumentos de sueldo a los alcaldes la Legislatura Municipal viene obligada a aprobar un reglamento que guíe dicho proceso, así como a considerar los criterios establecidos en el Artículo 3.012 de la Ley de Municipios Autónomos. Cabe recordar que conforme al Artículo 14 del Código Civil de Puerto Rico,

31 L.P.R.A. sec. 14 (1993), cuando la letra de la ley es clara y libre de toda ambigüedad, la misma no debe ser menospreciada bajo el pretexto de cumplir su espíritu.

Los peticionarios sostienen que no era indispensable contar con un reglamento y evaluar todos y cada uno de los criterios preceptuados en el Artículo 3.012 de la Ley de Municipios Autónomos al momento de aprobar los aludidos aumentos de sueldo. Fundamentan su alegación en las interpretaciones vertidas en unas opiniones emitidas por la Oficina del Comisionado de Asuntos Municipales (O.C.A.M.) a tales efectos. Sin embargo, no les asiste la razón. Nos explicamos.

Luego de aprobarse la enmienda que instituyó en la Ley de Municipios Autónomos el procedimiento a seguir para considerar los aumentos de sueldo a los alcaldes, la O.C.A.M. se expresó para brindar su interpretación de dicha disposición. En síntesis, concluyó que la aprobación de un reglamento no era una condición *sine qua non* para conceder un aumento de sueldo. Determinó además que los criterios allí enumerados no eran exhaustivos, por lo que incumplir con alguno de ellos al realizar la evaluación no era fatal, ni mucho menos debía ser causa de nulidad automática. E.L.A v. Crespo Torres, *supra*, a las págs. 782-784.

Ante la discrepancia entre las interpretaciones emitidas por la O.C.A.M. y aquellas brindadas por el Secretario de Justicia y la Oficina del Contralor de

Puerto Rico, la O.C.A.M. emitió el 18 de julio de 2002 una Circular Informativa en la que reexaminó sus opiniones vertidas con anterioridad. Así, pues, indicó que el lenguaje inequívoco de la Ley de Municipios Autónomos era a los efectos de que al conceder aumentos de sueldo a los alcaldes se tenían que tomar en consideración todos los criterios establecidos en la Ley, además de aprobar un reglamento previo a tomar la determinación.

Aun cuando se ha reconocido la facultad que tiene la O.C.A.M. de asesorar y aprobar reglamentación en las materias relacionadas con la organización, administración, funcionamiento y operación de los municipios, así como evaluar las leyes aplicables a los municipios y someter a la legislatura sus recomendaciones, las opiniones que dicha oficina vierta para cumplir con dichas funciones tienen solamente carácter persuasivo. Artículo 41 de la Ley de Municipios Autónomos de Puerto Rico, 21 L.P.R.A. sec. 4901 (2005); E.L.A. v. Crespo Torres, *supra*, a las págs. 791-792. Por lo tanto, no es factible impartirle validez a actuaciones ilegales de los municipios por el simple hecho de que las mismas estuvieron sustentadas en interpretaciones de la ley realizadas por la O.C.A.M. Íd. a la pág. 792.

A tono con lo anterior y por analogía, anteriormente hemos señalado que las Opiniones del Secretario de Justicia sólo tienen carácter persuasivo, por lo que las mismas no pueden obligar a los tribunales. San Gerónimo

Caribe Project v. A.R.Pe., 174 D.P.R. 640, 671 (2008). En

E.L.A. v. Crespo Torres, *supra*, a la pág. 792, citando

nuestras expresiones en San Gerónimo Caribe Project v.

A.R.Pe., *supra*, enunciamos que:

> En cuanto al efecto de las Opiniones del Secretario
> de Justicia a nivel interno de las agencias del
> Ejecutivo, se han elaborado teorías que le adscriben
> un carácter consultivo, no mandatorio, por lo que —
> teóricamente— el recipiente de ella no está obligado
> a seguir sus lineamientos. Sin embargo, por tratarse
> de opiniones oficiales del funcionario ejecutivo de
> mayor jerarquía encargado de la administración de la
> justicia, en realidad son de un gran valor
> persuasivo.[10] (Cita omitida).
>
> ....

La O.C.A.M. en su circular del 18 de julio de 2002

expresó que las directrices que estaba pautando en la

misma tendrían carácter prospectivo, por lo que los

aumentos de sueldo concedidos bajo sus opiniones

anteriores no se verían afectados ni podrían ser

invalidados. Sin embargo, según mencionáramos

anteriormente, a las opiniones de la O.C.A.M. sólo se les

podrá adjudicar un carácter meramente persuasivo y, por el

orden jerárquico de las fuentes de Derecho, las mismas

nunca podrán ir por encima de la letra clara de la ley.

Es por dicha razón que aun cuando en E.L.A. v. Crespo

Torres, *supra*, a las págs. 792-793, reconocimos que la

asesoría de la O.C.A.M. es crucial en los asuntos fiscales

---

[10]   C.I. Gorrín Peralta, Fuentes y proceso de investigación jurídica, Oxford, Ed. Equity Pub. Co., 1991, pág. 258.

de los municipios, aclaramos que sus opiniones nunca podrán tener carácter vinculante.

En el caso de autos, cuando se aprobaron las ordenanzas para aumentar el sueldo del Sr. Negrón no existía ningún reglamento para guiar dicho proceso. De hecho, fue en abril del año 2000, tres años después de haberse concedido el aumento de sueldo, cuando finalmente la legislatura municipal aprobó un reglamento para establecer los procedimientos de evaluación y determinación del sueldo del alcalde. Cabe mencionar que para cuando se aprobaron las aludidas ordenanzas, ya se habían incorporado a la Ley de Municipios Autónomos los requisitos establecidos en el Artículo 3.012 de dicho cuerpo legal.

En cuanto a los criterios enumerados en la disposición estatutaria, aun cuando hemos expresado que los mismos no constituyen una lista taxativa y que la determinación de si se cumplió o no con los mismos va a descansar sobre una base de razonabilidad, no existen expresiones en las ordenanzas ni en las actas de los procesos llevados a cabo al aprobar las mismas que nos convenzan de que el análisis llevado a cabo fue uno razonable.

Basado en unos hechos muy similares en E.L.A. v. Crespo Torres, *supra*, a la pág. 798, resolvimos y citamos que:

> [T]odo aumento de sueldo a un alcalde debe estar
> precedido por la aprobación del reglamento que dispone
> el Art. 3.012 de la Ley de Municipios Autónomos,

*supra*, y que al conceder el aumento, la legislatura municipal debe tomar en consideración como guías, los siete criterios esgrimidos en la ley.

La obligación de cumplir con dichos requisitos surge además de los motivos por los cuales en el año 1995 se decidió enmendar la Ley de Municipios Autónomos para añadir el Artículo 3.012 a dicho cuerpo legal. Se procuró terminar con los procesos informales carentes de la transparencia que se supone caracterice todos los asuntos que envuelven el desembolso de fondos públicos.

Del mismo modo, sólo con un examen somero de la ley, nos percatamos que su lenguaje claro es a los efectos de que es mandatorio aprobar el reglamento y tomar en cuenta los requisitos que se esgrimen en la misma. Sobre el particular, dispone la ley en términos imperativos que la Legislatura Municipal **aprobará** un reglamento que regirá los procedimientos de evaluación, determinación y adjudicación del sueldo del alcalde y que al considerar los aumentos **tomará** en consideración los criterios enumerados en la disposición legal.

Dentro del marco del Derecho antes enunciado, entendemos que los Legisladores Municipales de Villalba actuaron al margen de la ley al aprobar los aumentos de sueldo sin cumplir con los requisitos establecidos en la Ley de Municipios Autónomos. Al tomar esta decisión rechazamos como defensa el haber actuado confiando en la posición original de la O.C.A.M., puesto que las

interpretaciones de una agencia del gobierno no pueden ir por encima del texto claro de la ley.

Por lo tanto, no erró el TA al resolver que la Asamblea Municipal estaba impedida de actuar sobre el sueldo del alcalde en ausencia de un reglamento que guiara el proceso y sin que mediase la evaluación de factores necesarios para sustentar dicha determinación.

## C.

### DOCTRINA DE COBRO DE LO INDEBIDO

Uno de los remedios solicitados por el Estado en su Demanda es la restitución del dinero pagado en concepto de aumento de salario al Sr. Negrón en virtud de las Ordenanzas 43 y 46. En la tarea de determinar si procede la devolución de dichos fondos públicos es fundamental tomar en cuenta que los pagos que se le hicieron al ex alcalde fueron realizados bajo la creencia de que éste tenía el derecho a recibirlos, conforme la interpretación del Artículo 3.012 de la Ley de Municipios Autónomos, vertida por la O.C.A.M.

El Código Civil de Puerto Rico dispone en su Artículo 1795, 31 L.P.R.A. sec. 5121 (1990), que cuando se recibe una cosa que no había derecho a cobrar y que por error ha sido indebidamente entregada, surge la obligación de aquel que la recibió de restituirla. Dicha disposición legal recoge lo que los juristas han denominado como la doctrina de cobro de lo indebido. En Sepúlveda v. Depto. de Salud, 145 D.P.R. 560 (1998), y reafirmado recientemente en

E.L.A. v. Crespo Torres, *supra*, a las págs. 793-794, establecimos que para que se configure la doctrina de cobro de lo indebido se tienen que cumplir los siguientes tres requisitos: (1) que se produzca un pago con la intención de extinguir una obligación, (2) que no haya justa causa para el pago, es decir, que no exista una obligación jurídica entre el que paga y el que cobra, o que existiendo la misma, sea por una cantidad menor a la pagada y (3) que el pago haya sido hecho por error y no por mera liberalidad o por otro concepto.

Con base en dicha doctrina, hemos distinguido entre lo que constituye un error de hecho y un error de derecho. Así, anteriormente hemos expresado que el error de hecho es aquel que se comete cuando alguien obra a base de unos hechos que no son los verdaderos o cuando ocurre un error formal o de trámite. En cambio el error de derecho tiene lugar cuando el que realiza el pago lo hace amparado en la creencia de que éste le es exigible en derecho, bien porque desconoce la norma que lo descarga del pago o por interpretación errónea del derecho aplicable. E.L.A. v. Crespo Torres, *supra*, a la pág. 794; Sepúlveda v. Depto. de Salud, *supra*, a la pág. 568.

Amparados en la jurisprudencia del Tribunal Supremo de España y en la interpretación que varios tratadistas españoles le han dado al Artículo 1895 del Código Civil Español, homólogo del Artículo 1795 de nuestro Código Civil, adoptamos la norma de que sólo el error de hecho y

no el de derecho da lugar a la obligación de restituir. E.L.A. v. Crespo Torres, *supra*, a la pág. 794; Sepúlveda v. Depto. de Salud, *supra*, a las págs. 567-568; Aulet v. Depto. Servicios Sociales, 129 D.P.R. 1, 48 (1991). Añadimos que se exime a la persona que recibió el pago indebido por un error de derecho de devolver lo pagado, aun cuando dicho pago se trate de fondos públicos. Aulet v. Depto. Servicios Sociales, *supra*, a la pág. 48; A.C.A.A. v. Bird Piñero, 115 D.P.R. 463, 467 (1984).

No obstante, la distinción antes esbozada sobre el error de hecho y el de derecho fue abandonada en la jurisprudencia española a partir de la Sentencia de 7 de julio de 1950. De ese modo, en España se acogió la nueva postura que dispone que el derecho de repetición es procedente tanto si el error cometido es de hecho como de derecho. En E.L.A. v. Crespo Torres, *supra*, a las págs. 795-797, citando a tratadistas españoles y expresiones del Prof. Michel Godreau[11] descartamos el anterior precedente judicial en nuestra jurisdicción y acogimos la corriente moderna abandonando, para efectos de la restitución, la distinción entre el error de hecho y el error de derecho. Aclaramos, sin embargo, que dicha norma sería de aplicación a casos futuros sobre la materia en cuestión, descartando así la posibilidad de extenderla retroactivamente a unas partes que confiaron en el estado

---

[11]    M.J. Godreau, Derecho Civil Patrimonial, 69 Rev. Jur. U.P.R. 519, 540-541 (1999).

de derecho vigente al aprobar y desembolsar aumentos de sueldo.

En la presente situación de hechos, la Asamblea Municipal aprobó unas ordenanzas con el fin de concederle un aumento de sueldo al Sr. Negrón, entonces alcalde del Municipio, amparados en la interpretación que la O.C.A.M. había realizado del Artículo 3.012 de la Ley de Municipios Autónomos. No obstante, en el proceso no cumplieron con la aprobación de un reglamento ni con la evaluación de unos requisitos mínimos enumerados en la aludida disposición legal.

A base de lo anterior, hemos resuelto que habiéndose efectuado dichos pagos bajo la creencia de que los mismos procedían en derecho y no como mera liberalidad, con la intención de cumplir con una obligación que se reputaba válida y sin haber justa causa, ya que no se aprobó en cumplimiento con la ley, indudablemente los mismos se trataron de un cobro de lo indebido.

El estado de derecho vigente en cuanto a la doctrina de cobro de lo indebido, para cuando se aprobó y se pagó el dinero relativo al aumento de sueldo del Sr. Negrón, mantenía la distinción entre el error de hecho y el error de derecho para efectos de cuándo procedía la restitución. Aludiendo a dicha normativa, cuando el error cometido era de hecho existía una obligación de restituir lo recibido, mientras que si se trataba de un error de derecho se eximía a la persona de devolver lo pagado indebidamente.

En el caso de autos, los procesos concernientes al aumento de sueldo se realizaron tomando como base las interpretaciones que había realizado la O.C.A.M. del articulado pertinente en la Ley de Municipios Autónomos. Sin embargo, dicha interpretación brindada por la O.C.A.M. no estaba acorde con la letra clara del Artículo 3.012 de la Ley de Municipios Autónomos, por lo que la misma era manifiestamente errónea.   Al conceder los aumentos confiando en la interpretación errónea del derecho aplicable brindada por la O.C.A.M., el pago hecho al Sr. Negrón es considerado como un error de derecho.  Se acoge como error de derecho, ya que la Legislatura Municipal, al confiar en la interpretación de la O.C.A.M, actuó sin ajustarse a la norma jurídica vigente.

Habiendo determinado que los aumentos y los pagos concernientes se tratan de un error de derecho, según la normativa vigente para el momento en que los mismos fueron concedidos y para cuando el Estado instó la presente acción, no procede que el Sr. Negrón tenga que restituir los mismos.   Hemos tenido en cuenta al tomar esta decisión, que aun cuando en E.L.A v. Crespo Torres, *supra*, resolvimos que procede la restitución tanto cuando el error cometido es de hecho como cuando es de derecho, claramente indicamos que dicha norma de derecho sería de aplicación a casos futuros y no a aquellos en los cuales las partes habían confiado en el estado de derecho vigente

que distinguía para efectos de la restitución entre el error de hecho y el de derecho.

Por lo tanto, erró el TA al ordenar el reembolso a las arcas municipales de los fondos municipales desembolsados por concepto de aumentos de sueldo por constituir el pago de los mismos un error de derecho.

**D.**

**DEFERENCIA A LAS DETERMINACIONES DEL TPI
SOBRE TESTIMONIOS VERTIDOS**

Por último, los peticionarios aducen que erró el foro apelativo intermedio al no darle la debida deferencia a la determinación de credibilidad concedida por el TPI a los testimonios vertidos en el juicio.

Es norma bien asentada que los tribunales apelativos deben abstenerse de intervenir con las determinaciones de hechos y la adjudicación de credibilidad realizada por los tribunales de instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. Pueblo v. García Colón, 2011 T.S.P.R. 83, 182 D.P.R. ___ (2011); González Hernández v. González Hernández, 2011 T.S.P.R. 65, 181 D.P.R. ___ (2011). Se le brinda un respeto a la aquilatación de credibilidad que realiza el foro primario en consideración a que, de ordinario, sólo tenemos récords mudos e inexpresivos. Muñiz Noriega v. Muñoz Bonet, 177 D.P.R. 967, 987 (2010); Trinidad v. Chade, 153 D.P.R. 280, 291 (2001).

Igualmente dispone la Regla 43.2 de las Reglas de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 43.2 (2001),[12] en lo pertinente al caso ante nos, que:

> Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos....
>
> ....

Sin embargo, en Méndez v. Morales, 142 D.P.R. 26, 36 (1996), expresamos que aunque el arbitrio del juzgador de hechos es respetable y merece deferencia, el mismo no es absoluto. Por lo tanto, cuando los tribunales de instancia realicen una apreciación errónea de la prueba no se le concederá inmunidad a su determinación, por lo que la misma puede estar sujeta a la facultad revisora de los tribunales apelativos. Íd.; Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702, 712 (1990); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987). De ese modo, hemos resuelto reiteradamente que los tribunales apelativos podremos intervenir con las conclusiones de los jueces de instancia cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. Méndez v. Morales, supra, a la pág. 36.

En la presente situación de hechos el TA, luego de examinar las transcripciones de los tres (3) días de

---

[12] Debido a que los eventos relevantes al presente recurso sucedieron previo al 1 de julio del 2010, utilizamos las disposiciones procesales correspondientes a las Reglas de Procedimiento Civil de 1979.

vistas, además de toda la prueba documental que obraba en los autos del caso, entendió que era inaceptable el planteamiento de la Asamblea Municipal, acogido por el TPI en su decisión, en cuanto a que los legisladores municipales habían discutido informalmente los criterios contemplados en la ley. Los peticionarios alegan que dicha determinación es errada y que el TA debió haberle dado deferencia a la determinación de credibilidad concedida por el TPI a los testimonios vertidos.

Después de haber tenido la oportunidad de revisar el expediente, entendemos correcta la determinación del TA sobre este particular. Lo anterior bajo la premisa de que a pesar de que del testimonio del Sr. Flores se desprenden expresiones generales en cuanto a que los Asambleístas Municipales tomaron en consideración los criterios requeridos, ello no surge ni de las ordenanzas correspondientes ni de las actas de los procesos llevados a cabo para aprobar las mismas. De los récords municipales no se desprende que se hayan tomado en cuenta otros elementos más allá de la preparación académica del Sr. Negrón y de lo que éste con su liderato alegadamente logró para el Municipio.

Para el momento que se aprobaron las ordenanzas, disponía el Artículo 5.013 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4213 (2005),[13] que en las actas

_____

[13] Posteriormente, el Artículo 5.013 de la Ley de Municipios Autónomos, *supra*, fue enmendado por la Ley Núm. 135 de 25 de julio de 2000.

de los procedimientos legislativos se debía consignar, entre otros, los asuntos discutidos, las manifestaciones hechas por cada uno de los miembros con relación a los asuntos considerados y los acuerdos sobre los proyectos de resoluciones y ordenanzas. Sin embargo, como mencionáramos, no consta ni en las ordenanzas ni en las actas de los procedimientos que las gestiones que culminaron en la aprobación de los aumentos de sueldo al Sr. Negrón se hayan realizado con la formalidad requerida por el Artículo 3.012 de la Ley de Municipios Autónomos, al no mediar la consideración de los criterios utilizados para aprobar el aumento de salario del primer mandatario municipal con la debida designación de los requisitos establecidos en la ley. No teniendo otra prueba al respecto, coincidimos con la apreciación del TA a los efectos de que no había base en el expediente como para entender que la Asamblea Municipal hubiese cumplido con lo establecido en la ley.

No podemos perder de perspectiva que el proceso de determinar el sueldo de los alcaldes debe ser uno de suma rectitud, en el cual deben imperar consideraciones de la más alta jerarquía, pues, después de todo, de lo que se trata es de la disposición y administración de los fondos públicos. Al así hacerlo, debemos tener en cuenta la apremiante situación económica por la que está atravesando la Isla y asegurarnos que nuestro norte siempre sea fomentar el mayor cuidado, celo y prudencia en el uso y la

disposición de los fondos públicos. La normativa legal concerniente a este caso va dirigida precisamente a velar por el uso sensato de los fondos públicos, por lo que la misma le impone un deber a los legisladores municipales de mesura y escrupulosidad al poner en práctica sus preceptos.

Lo anterior nos lleva a concluir que no erró el TA al rechazar el testimonio del Sr. Flores, según vertido en el juicio.

**III.**

Por los fundamentos antes expuestos, confirmamos la determinación del TA al reconocerle legitimación activa al Estado para incoar la acción del caso de autos, así como al aceptar tener jurisdicción para entender en la controversia planteada. Asimismo entendemos que dicho foro resolvió conforme a derecho en tanto y en cuanto concluyó que era mandatorio aprobar un reglamento y cumplir con los criterios establecidos en el Artículo 3.012 de la Ley de Municipios Autónomos antes de concederle el aumento de sueldo al Sr. Negrón. Sin embargo, revocamos la determinación recurrida en cuanto ordenó la restitución de los fondos públicos, ya que al constituir la aprobación del aumento de sueldo y el desembolso del mismo un error de derecho, por la normativa jurídica vigente para ese entonces, no procede que el Sr. Negrón devuelva lo que le fuera pagado en aumentos de salario.

Así modificada, se confirma la Sentencia recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emitió Opinión Disidente a la cual se unió la Juez Asociada señora Rodríguez Rodríguez. La Jueza Asociada señora Fiol Matta disiente sin opinión escrita.


                    Aida Ileana Oquendo Graulau
                  Secretaria del Tribunal Supremo

| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br><br>        Recurrido<br><br>            v.<br><br>Hon. Bernardo Negrón Montalvo y Rosa E. Rodríguez Martínez, por sí y como representantes de la Sociedad Legal de Gananciales compuesta por ambos; Asamblea Municipal  de Villalba, representada por su presidente David Albino Rolón; Municipio de Villalba, representado por su alcalde Orlando Torres González, Sutano (a) de Tal<br><br>        Peticionarios | CC-2008-0975 | Certiorari |

Opinión Disidente emitida por el Juez Presidente señor Hernández Denton a la cual se une la Juez Asociada señora Rodríguez Rodríguez.

San Juan, Puerto Rico, a 27 de enero de 2012.

Hoy, al examinar una controversia que habíamos atendido recientemente, este Tribunal desaprovecha la oportunidad para reconsiderar una postura que, a nuestro entender, atenta contra el buen uso de los fondos públicos. Se trata, una vez más, de un aumento de salario concedido ilegalmente a un alcalde. Por entender que la inexistencia del Reglamento exigido por el Art. 3.012 de la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4112, impedía, sin más, la aprobación del aumento de sueldo en controversia, y, que toda interpretación ulterior hecha por el Tribunal era innecesaria, ordenaríamos la restitución del salario pagado ilegalmente.

I.

El 13 de marzo de 1997, la Asamblea Municipal de Villalba aprobó la Ordenanza Núm. 43, Serie 1996-1997, a los fines de aumentar el salario del entonces Alcalde, Hon. Bernardo Negrón Montalvo, en ochocientos dólares ($800) mensuales. Posteriormente, el 9 de abril de 1997, enmendó la Sec. 1 de dicha Ordenanza, para incrementar el salario del Alcalde en doscientos ($200) dólares adicionales. Al momento de realizar estos aumentos, el Municipio de Villalba no contaba con un reglamento que regulara dicho proceso.

Posteriormente, la Oficina del Contralor emitió un informe mediante el cual cuestionó los referidos aumentos. Concluyó, pues, que para aprobar esos aumentos no se consideraron los estados financieros auditados del Municipio porque para la fecha de aprobación había un retraso de dos años en la preparación de los mismos. Además, dichos estados financieros, cuando finalmente se prepararon, reflejaron un déficit de sobre un millón de dólares para el año en que se otorgaron los aumentos.

En consecuencia, el Estado Libre Asociado presentó la acción de autos ante el Tribunal de Primera Instancia y solicitó que se decretaran nulas e ilegales las referidas Ordenanzas municipales, y, por ende, se declarase que los aumentos recibidos por el Alcalde constituyeron pagos indebidos e ilegales de fondos públicos que conllevaban la devolución de la cantidad cobrada, ascendente a $53,200.00.

El foro de primera instancia concluyó que, el no haberse aprobado un reglamento requerido por el Art. 3.012 de la Ley de Municipios Autónomos, *supra*, antes de concederse el aumento, no lo invalidaba -de suyo- ni convertía en ilegales los pagos realizados. Por ello, desestimó la demanda.

Inconforme, el Estado acudió ante el Tribunal de Apelaciones. El foro apelativo intermedio revocó y concluyó que la ausencia de un reglamento que guiara la evaluación del aumento de salario invalidó la acción de la Asamblea Municipal. En consecuencia, ordenó el rembolso de los pagos hechos ilegalmente.

Así las cosas, el ex Alcalde acudió ante nos y solicitó la revocación de esa determinación.

II.

El Art. 3.012 de la Ley de Municipios Autónomos, *supra*, dispone que:

> **La Legislatura Municipal aprobará, con el voto de dos terceras partes de los miembros del cuerpo, el reglamento que regirá los procedimientos de evaluación, determinación, y adjudicación, del sueldo del Alcalde.**
>
> Al considerar aumentos de salarios para el alcalde, la Legislatura **tomará en consideración**, entre otros, que dicho cuerpo encuentre necesarios, los siguientes criterios:
>
> 1. El presupuesto del municipio y la situación fiscal de los ingresos y gastos reflejados en los informes de auditoría o *single audit*.
>
> 2. La población y el aumento en los servicios a la comunidad.

3. El cumplimiento con los controles fiscales y administrativos establecidos por O.C.A.M., la Oficina del Contralor y el gobierno federal.

4. La complejidad de las funciones y responsabilidades del Primer Ejecutivo.

5. El costo de vida, información que deberá suplir la Junta de Planificación a solicitud de la Legislatura Municipal.

6. La habilidad de atraer capital y desarrollo económico al respectivo Municipio.

7. Tomar en cuenta los sueldos devengados por los miembros de la Asamblea Legislativa y los Secretarios del Gabinete Constitucional. *Íd.* (Énfasis suplido).

Como se deduce de lo anterior, el Art. 3.012 antes reseñado impone dos requisitos a la Legislatura Municipal para poder aprobar cualquier aumento de salario a un alcalde. En primer lugar, le requiere a la Legislatura Municipal el deber de aprobar un reglamento que regule dicho proceso y, en segundo lugar, dispone que la Legislatura Municipal **"tomará en consideración"**, como mínimo, los siete criterios enumerados, al momento de aprobar el aumento. Siendo esto una obligación expresa de la Legislatura Municipal, cualquier aumento de salario contrario al referido mandato de ley es ilegal.

Como señalamos en nuestra Opinión Disidente en <u>E.L.A. v. Crespo Torres</u>, 180 D.P.R. 776 (2011), este artículo fue incluido mediante enmienda a la Ley de Municipios Autónomos a raíz de la aprobación de la Ley Núm. 36 de 13 de abril de

1995. Asimismo, el Informe de la Comisión de Asuntos Municipales del 26 de agosto de 1993 sobre el Sustitutivo del P. de la C. 626, que luego se convirtió en la Ley Núm. 36 de 1995, expresó que el texto propuesto sobre el Art. 3.012 buscaba que la entonces llamada Asamblea Municipal tuviera unas guías para establecer un salario justo de acuerdo a las capacidades del alcalde y las circunstancias económicas de los municipios. Véase *Íd*. págs. 7-9. A tales efectos, dispuso:

> La disparidad en los sueldos de los Alcaldes responde a la falta de guías y criterios uniformes que puedan aplicarse por la Asamblea Municipal para determinar el aumento de salario del Primer Ejecutivo. La importancia de las disposiciones que se introducen en la medida sustitutiva permiten que la Asamblea Municipal evalúe la capacidad fiscal del municipio para compensar adecuadamente al Alcalde tomando en consideración el presupuesto, la población, la complejidad de las funciones, las responsabilidades del Primer Ejecutivo y el costo de vida. Este último, es un dato indispensable que deberá suplir la Junta de Planificación a las Asambleas. *Íd*. pág. 9.

En el presente caso, cabe señalar que las Ordenanzas municipales que dieron lugar al aumento en controversia no exponen de qué manera se consideraron los criterios en controversia. De hecho, contrario al Informe de la Oficina del Contralor y de los estados financieros auditados, la Ordenanza Núm. 43 simplemente expone que "bajo el liderato excelente del Hon. Bernardo Negrón Montalvo, el Municipio de Villalba ha logrado un desarrollo económico de gran envergadura". A su vez, la Ordenanza Núm. 46 se limita a exponer que "por acuerdo general" se acordó el aumento, por

ser "la cantidad justa y razonable para los puestos de Alcalde de Puerto Rico". Ante esta realidad, una mayoría de este Foro concluye que el aumento de salario en controversia fue ilegal. No obstante, al igual que sucedió en E.L.A. v. Crespo Torres, *supra*, la Sentencia aplica la doctrina de error de derecho y resuelve que el estado de derecho sobre esa doctrina al momento de ocurrir el aumento de salario no conllevaba la devolución del cobro de lo indebido. Por lo tanto, el resultado de la Sentencia que hoy se emite es que, a pesar de estar de acuerdo con todo lo que resolvió el Tribunal de Apelaciones, una mayoría de este Tribunal impide la devolución de los pagos ilegales.

III.

Este caso nos brinda la oportunidad de reafirmar nuestras expresiones en nuestra Opinión Disidente en E.L.A. v. Crespo Torres, *supra*. Por existir una disposición clara y precisa sobre el procedimiento que debió seguir el Municipio de Villalba para aumentar el salario del Alcalde, esta Curia debió resolver, sin más, que dicho aumento era inválido y ordenar el reintegro de los fondos públicos cobrados ilegalmente. Por ello, somos del criterio de que era innecesario entrar a examinar la aplicabilidad de la doctrina de error de derecho.

Federico Hernández Denton
Juez Presidente